Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of ANTONIO PINTO, Respondent, for Compensation under the Workmen's Compensation Law, *v.* CHELSEA FIBRE MILLS, Employer, and AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, March 2, 1921.

**Workmen's Compensation Law — accidental injury — nature of proof — happening of accident as jurisdictional — presumption under section 21 — proof of accident — ulcer on cornea not attributable to dust — presumption that dust caused injury — presumption that hemp contained infectious germs.**

The elements of an accidental injury arising out of and in the course of an employment must be shown to exist by common-law proof.

While section 21 of the Workmen's Compensation Law raises a presumption that the claim comes within the provisions of the statute, there is no presumption that an accident has happened because some one makes a claim for compensation.

Whether an accident happened is a fact jurisdictional in its character, and must be established by evidence.

To establish the fact of an accidental injury under the statute, in the absence of an actual contusion, it is necessary to show that the initial cause, that is, the accident, naturally and unavoidably produced the results for which the claim is made.

An award for the partial loss of the vision of an eye from an ulcer of the cornea which is a disease or infection is unauthorized, in the absence of evidence of an accident resulting in an injury to the eye, or that there

was something about the dust which is alleged to have lodged in the eye which would "naturally and unavoidably result" in the disease which has destroyed the vision to some extent.

In the absence of substantial evidence it cannot be presumed that dust from hemp is charged with disease germs.

JOHN M. KELLOGG, P. J., dissents.

APPEAL by the defendants, Chelsea Fibre Mills and another, from an award, order and decision of the State Industrial Commission, made on the 4th day of June, 1920.

*Jeremiah F. Connor*, for the appellants.

*Charles D. Newton*, Attorney-General [*E. C. Aiken, Deputy Attorney-General*, of counsel], for the respondents.

WOODWARD, J.:

The State Industrial Commission has made an award for the loss of ninety per centum of the vision of the left eye of the claimant, a boy of fifteen years of age, for a period of one hundred and fifteen and two-tenths weeks. In its conclusions of fact it finds that on or about the 28th day of April, 1919, while the claimant was engaged in his regular employment and while working on a machine at the plant of his employer, " some particles of dust from same entered his left eye, thereby causing him to rub the same. His injured eye troubled him so much that on the next day he returned to the nurse in the emergency room, who put drops in it. A large irregularly shaped opacity occupying the entire outer half of the cornea and also the entire pupillary area developed as a result of the particles in said eye and on account of which claimant sustained 90% loss of vision in the left eye. This loss of 90% of the vision in the left eye is the direct result of the injury which claimant sustained on or about the 28th day of April, 1919."

The defendants contend upon this appeal that there is no evidence to sustain this determination. The Commission, following a custom condemned by the Court of Appeals, has made the opinion of one of the Commissioners a part of its findings of fact, and this Commissioner tells us in his opinion that the claimant, an Italian boy, not overly bright, " impressed me as truth-telling," but the impressionability of Commissioners is not a substitute for common-law evidence of facts, and the

rule is now established that " all the elements of an accidental injury arising out of and in the course of an employment must be shown to exist by common-law proof " (*Russo* v. *Jarvis Stores, Inc.*, 193 App. Div. 587, 589, and authority there cited), before there is power in the Commission to make an award. Section 21 of the Workmen's Compensation Law raises a presumption that the claim comes within the provisions of the act only when there is an " absence of substantial evidence to the contrary," but this does not raise a presumption that an accident has happened because some one makes a claim for compensation; that is a fact jurisdictional in its character, and it must be established by evidence.

The undisputed evidence in this case is that the claimant is suffering from an ulcer of the cornea, and an ulcer arises " generally in a constitutional disorder." (Webster.) In other words, an ulcer is a disease or infection. An "injury" or a "personal injury," as used in the Workmen's Compensation Law, means " only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom." (§ 3, subd. 7, as amd. by Laws of 1917, chap. 705.) No one would contend that mere floating dust, innocuous in its composition, could produce the " direct result " concededly existing in this case. In other words, mere particles of dust floating in the atmosphere and entering the eye could not produce an ulcer as a direct result. To establish the fact of an accidental injury under the statute, in the absence of an actual contusion, it is necessary to show that the initial cause — the accident complained of — naturally and unavoidably produced the result for which the claim is made. There is no presumption that the dust, which is alleged to have entered the eye of the claimant, was calculated to " naturally and unavoidably result " in an ulcer of the cornea of the eye, or to permanently impair the vision. Every man, woman and child of years of intelligence knows that dust in the eyes does not produce permanent impairment of the sight under ordinary circumstances. In *Matter of Eldridge* v. *Endicott, Johnson & Co.* (228 N. Y. 21, 24, 25) the court points out that the Commission is not justified in taking " judicial notice or in presuming that hides such as those in question usually or frequently contain

anthrax germs and that a person working about them with an
open wound is likely to receive the germ and die of anthrax,"
and that the Commission is " not authorized to make an award
under this section in the absence of at least some evidence that
the employee might with his cut have taken anthrax while at
work about the hides." So, in the case now before us, the
Commission is not authorized to make an award in the absence
of evidence that there was something about the dust which
is alleged to have lodged in the claimant's eye which would
" naturally and unavoidably result " in the disease which has
destroyed the vision to some extent.

There is no such evidence in this case. The claimant
testified that this alleged accident happened on the 28th day
of April, 1919; that he first noticed that his eye bothered him
on the day named, and that he went to the nurse in the factory
who put some drops in his eye, and that he told her some dust
went in his eye; that he told her immediately; that the fore-
lady in the room where he was employed sent him to the nurse;
that the eye never bothered him before that date. The fore-
lady, when called as a witness, testified that she was in charge
of the room where the claimant worked and that she did not
send him to the nurse; that she never heard of the alleged
accident until months later. The nurse testified that the
claimant came to her on the twenty-fourth day of April and
complained of a sore eye; that he said he did not know what
was the matter with his eye. The boy was subsequently
taken to a hospital, and the record there of the history on
admission is that " patient says that he waked up in A. M.
two or three weeks with good deal pain," but no mention of
any alleged accident. The claimant was recalled, identified
the forelady, and admitted that he did not think she would
lie about what occurred, and said he did not remember when
asked in reference to telling her about the dust getting into
his eye. Then, after being admonished by the Commissioner
who is impressed with his truthfulness, to " tell me just as truth-
fully as you know how what happened to you," the claimant
again declared that some dust went in his eye, and that it did
not hurt him as soon as he got the dust in his eye, but that
he began to rub it; that he went to the nurse about half an
hour later and told her " it was bloodshot." He admitted that

the nurse asked him what had happened, and when asked what he told her he paused, said, " I told her just," then laughed and did not complete the answer.  The question being repeated he said, " I don't remember."  He then admitted that he did not tell the nurse just then that he had got dust in his eye, and being further pressed said that it was after he was in the hospital, and he was discharged from the hospital on the twenty-ninth day of May.  He further admitted that the suggestion of the dust came from the Italian doctor who attended him, and that this was the first time he thought of the dust as the cause of the trouble.  This was all brought out by examination on the part of the Commissioner, and if there was any confusion on the part of the claimant it was not due to undue severity on the part of the examiner.

In view of the testimony of the nurse, supported by her record, that the claimant came to her and complained of his eye on the twenty-fourth day of April, and that the claimant insists upon the twenty-eighth day of April as the date of his alleged accident, it must be entirely obvious that there is no evidence of probative force of any accident whatever at the time the claimant went to the nurse, and the secretary of the company, who was talking with the nurse when the claimant came in, testifies that the nurse asked him what had happened and that the claimant denied that anything had happened or that he got anything in his eye; that he said nothing had happened; that it " just got sore."  There was trouble with this eye on the twenty-fourth day of April; this testimony is wholly undisputed.  The claimant not only stated that nothing had happened, but declared that it just got sore, and he admitted that his first thought of dust in his eye as the cause of the trouble came to him at the time it was suggested by his doctor, weeks after the alleged accident.  No jury would be justified in finding from this testimony that there was an accident on or about the twenty-eighth day of April, resulting in an injury to the left eye of the claimant.  But, if it be assumed that dust did get in his eye on this date, there is absolutely no evidence that the dust which entered his eye was capable of producing the disease or infection " naturally and unavoidably."  The dust itself, which the claimant

testifies did not hurt him at the time, certainly did not produce the loss of vision; it was only because of some disease or infection that the eye lost its power, and it may not be assumed that dust from hemp is charged with disease germs or bacteria, any more than like assumption is justified in the case of raw hides in the case already referred to.

The award should be reversed and the claim dismissed.

All concur, except JOHN M. KELLOGG, P. J., dissenting.

Award reversed and claim dismissed.