In the Matter of the Claim of SARAH GREEN, Appellant, against JOSEPH GEIGER, Employer, and UNITED STATES FIDELITY & GUARANTY CORPORATION, Insurance Carrier, Respondents. STATE INDUSTRIAL BOARD, Respondent.

Third Department, March 16, 1938.

*Earle H. Houghtaling*, for the appellant.

*William Warren Dimmick*, for the emplover. and insurance carrier, respondents.

*John J. Bennett, Jr., Attorney-General*, for the State Industrial Board, respondent.

RHODES, J. The decision of the Board recites that an " award of death benefits is hereby denied * * * on the ground that the evidence does not establish that the death of the said Jay Green was due to or related to an accident sustained within the meaning of the Workmen's Compensation Law."

Deceased was employed as a driver of a delivery truck, the employer being engaged in the bakery business.

On the morning of November 11, 1933, at about six-twenty, he left the bakery in the truck, which was loaded with bakery supplies; while on his route his truck stalled and he was seen working around the car and cranking it in an endeavor to start it for a period of fifteen minutes to half an hour. He then left the car, saying that he would telephone for a mechanic, and, after walking about fifteen feet from the car, he fell on his face and died.

A witness testified that deceased was a very conscientious man where his business was concerned; that while trying to start the car he was very much agitated because he was late on his route; that it was in the morning of Saturday, his busy day, and " he seemed to be in a fret to call up the garage."

The health officer diagnosed the cause of death as coronary thrombosis; from the history it was his opinion that deceased had suffered from endocarditis for one year and arteriosclerosis for about two years.

The proof of death, signed by him, though unverified, states: " Informant told me that he (deceased) had been trying to crank his car and could not. He started for a telephone and on his way

up a hill dropped dead." He then states the cause of death to be " Coronary *traumbosis*," and that, in his opinion, " The accident as above described, was indirectly the cause of death."

The health officer was called as a witness, and reiterated his opinion that the cause of death was coronary thrombosis — an occlusion of the coronary arteries of the heart. He said that, from an examination of the body of deceased, he knew he had this condition of the arteries. He then was asked: " Q. The condition you found him in, from your investigation, could have been brought about, death could have been brought about by an excessive exercise in starting that car, could it, assuming he was cranking the car to start it? * * * A. It is possible, the thing may be caused by excessive strain, may be caused by the man standing perfectly quiet." He was also asked: " Q. Now, if he did have a poor heart and overexercised himself by cranking the car or otherwise, walking up the hill, would such an exertion have a far more reaching effect and more likely to be fatal than a similar exertion on a normal man? A. Yes, sir." Further: " Q. Do you of your own knowledge * * * know whether this alleged accident was directly or indirectly the cause of death? * * * A. It may be possible. Q. I am asking if you know? A. I really don't know."

The record indicates that the Board thought that the evidence would not justify a finding of accidental death in view of the testimony of the health officer that he did not know whether the alleged accident was indirectly the cause of death. We infer that if the physician had testified that in his opinion the exertion did aggravate the heart condition and indirectly bring about death, the Board would have felt justified in making a finding to that effect. It is apparent that the physician could not thus testify with certainty. The law does not require proof of such positiveness. It is sufficient if from the facts a reasonable inference arises that the exertion caused the death.

If the solution of the problem depends upon a set phraseology and cabalistic formula of words, then judicial inquiry yields substance to form and becomes ritualistic in character, partaking of the nature of the incantation of the primitive witch doctor, the abracadabra of the ancient pagan mysteries or trial by ordeal of the medieval ages.

In the present case it is undisputed that deceased was suffering from a bad heart condition; he engaged in violent exercise in cranking the truck, became agitated and excited and almost immediately thereafter fell dead. It does not require an expert medical opinion to justify the inference that this unusual effort aggravated the heart condition and indirectly caused death.

A member of the Board based his decision " on the ground that there was no competent evidence of accident." Two witnesses testified to the effect that deceased fell after walking about fifteen feet from the car which he had just been cranking.

It should be emphasized that we do not say that the Board must so find. It is only because of the seeming misapprehension by the Board of the competency and sufficiency of the testimony that we suggest that the evidence is sufficient to sustain the inference of accidental death, in case the Board shall so find. Whether upon the evidence such inference is to be drawn and such finding made is, of course, solely for the Board to decide.

For the foregoing reasons the decision should be reversed and the matter remitted to the Board for such further consideration as it may deem proper, with costs to the appellant against the employer and carrier, respondents.

HILL, P. J., McNAMEE and BLISS, JJ., concur; HEFFERNAN, J., dissents.

Decision reversed and matter remitted to the Industrial Board for such further consideration as it may deem proper, with costs to the appellant against the employer and carrier, respondents.