WILLIAM LIPSON, Doing Business Under the Name of WM. LIPSON & COMPANY, Respondent, v. BRADFORD DYEING ASSOCIATION of U. S. A., Appellant.

First Department, July 2, 1943.

*Frederick C. McLaughlin* of counsel (*Ralph A. Bullock* and *Eugene W. Annis* with him on the brief; *McLaughlin, Russell & Bullock,* attorneys), for appellant.

*David L. Delman* for respondent.

COHN, J.  The action is in tort for false representation and fraud by reckless statement allegedly made by defendant upon which plaintiff relied.

Defendant, a dyer and finisher of cloth, processed clothing material for plaintiff's vendor, Ceasor Mills, Ch. Perman & Sons, Inc. (hereafter referred to as " Ceasor Mills "), and

thereafter upon direction from Ceasor Mills shipped the cloth to plaintiff affixing thereto its own labels indicating that the cloth was preshrunk. It is claimed that the word "preshrunk" stamped upon defendant's hang tags annexed to the rolls of cloth delivered to plaintiff was a reckless misstatement of fact.

After trial a jury rendered a verdict in favor of plaintiff for $1,500. Upon motion of plaintiff's counsel the verdict was set aside as to amount only upon the ground that there was no basis in the evidence for the sum assessed and a verdict was directed by the court for the full amount of the damages claimed, to wit, $4,879.68. Without objection, the Trial Justice had previously reserved decision on plaintiff's motion for a directed verdict. From the judgment entered upon the directed verdict, this appeal has been taken.

Plaintiff, a manufacturer of sport coats, bought from Ceasor Mills some 5,508 yards of cloth as per sample. Under shipping instructions from Ceasor Mills defendant shipped to plaintiff from cloth held for Ceasor Mills in open stock the total yardage ordered. The cloth was delivered in rolls of about fifty yards each and to each roll defendant had affixed the "preshrunk" hang tag. In placing his orders with Ceasor Mills plaintiff had made no mention of shrinkage but stressed quality, finish and color.

Upon receipt of the cloth plaintiff manufactured it into sport coats which he shipped to his customers. Because the goods were marked "preshrunk," plaintiff in cutting the cloth made no allowance for residual shrinkage. After the jackets had been shipped, complaints began to pour in to the effect that the garments sold had shrunk considerably, rendering them practically unmerchantable. Due to the many returns from customers, plaintiff finally ceased manufacturing from the cloth delivered by defendant. When he discontinued making the coats, he had on hand 748 yards of the cloth. Plaintiff claims that he was obliged to sell the returned jackets at greatly reduced prices.

The complaint alleges fraud by false representation in that defendant fraudulently and with intent to deceive plaintiff, recklessly and carelessly represented to plaintiff that the cloth which it had processed and delivered to plaintiff had been preshrunk, whereas in fact the merchandise was not preshrunk; that plaintiff relied on such representation; that plaintiff would not have accepted such merchandise and would not have manufactured therefrom had he known of the falsity of the repre-

sentation upon the labels; that because of the fraud and misrepresentation he suffered damage.

Plaintiff's general manager, who had been in the textile business for many years and was familiar with all its customs, stated that when the word "preshrunk" appears on a label affixed to cloth it means that the goods have been shrunk to a degree that they will no longer shrink when made into a garment; that when merchandise is received without such labels it is sent to a shrinker before manufacture. The labels apparently had been affixed to the cloth by defendant without any direction to that effect by its customer Ceasor Mills. Plaintiff claims that upon the evidence submitted at the trial the allegations of the complaint and the liability of the defendant upon the theory therein set forth were fully sustained. (*Glanzer* v. *Shepard*, 233 N. Y. 236; *Ultramares Corp.* v. *Touche*, 255 N. Y. 170.)

Defendant sought to prove that the goods which it delivered to plaintiff had in fact been preshrunk and that the statement contained on the tags was not false, but true. The material, according to the witnesses produced by defendant, was spun rayon and cotton cloth. Proof was adduced from defendant's experts that cloth of this quality described as "preshrunk," without specifying any degree of shrinkage, did not, in the trade, necessarily mean that the cloth would not shrink further when made into garments. These witnesses were highly qualified by long experience with reputable concerns in the trade. In testifying to the meaning in the textile trade of the word "preshrunk," they stated that when spun rayon and cotton cloth is preshrunk there is substantial residual shrinkage remaining in the cloth, the amount of which can only be determined by testing, and that for this reason the word "preshrunk" means very little unless the percentage of residual shrinkage is specified; that the general practice on rayons is not to guarantee any residual shrinkage.

This testimony as to the meaning of the term "preshrunk" was properly received under the established rule that parol evidence is admissible to explain the meaning which usage has given to words or terms as used in any particular trade or business, or in any particular locality. (*Newhall* v. *Appleton*, 114 N. Y. 140, 144; *Gumbinsky Bros. Co.* v. *Smalley*, 203 App. Div. 661, 667, affd. 235 N. Y. 619; 3 Williston on Contracts [rev. ed.] § 650; 1 Greenleaf on Evidence [16th ed.] § 295.)

One of the principal issues in the case, accordingly, was what, to a manufacturer, was the significance of the legend "pre-

shrunk '' stamped upon the labels attached to rolls of cloth delivered from the processor.

In his charge the Trial Justice instructed the jury to disregard the testimony of defendant's expert witnesses and then stated: '' The law will not tolerate for one moment any such distortion of a plain, simple, everyday, commonplace word. No man is believed when he swears that black means white, or that green means red. ' Preshrunk ' means shrunk to the point where it is useful and available in the manufacture of the article that is intended to be manufactured.'' This was duly excepted to.

After the jury had retired, it sent the following communication to the court: '' The jury would like to have the court's definition of ' preshrunk ' repeated and to know if it is to be accepted as the definition of the word in law.'' To this query, the court, granting an exception to both counsel, sent the following written reply: '' Preshrunk means shrunk to the degree or point where the article, the fabric, is reasonably fit and suitable to be used in the manufacture of men's coats. This is the definition of it for all purposes in this case and this definition is binding on the court and on the jury, and if not accepted by the jury its verdict will be set aside.''

In giving these instructions, we think the court committed prejudicial error. The weight and credibility of the testimony of witnesses were for the jury and not for the court. (*Maxwell* v. *Peters Co.,* 219 N. Y. 597; Chamberlayne Trial Evidence § 85.) The meaning of the word '' preshrunk '' as testified to by the witnesses for plaintiff and for defendant should have been submitted to the jury as an issue of fact.

The law is, of course, well settled that a jury may entirely reject the testimony of experts. (*Ensign* v. *Travelers Ins. Co.,* 193 App. Div. 369, affd. 233 N. Y. 521.) However, the credibility of such witnesses, the weight and sufficiency of their evidence are for the jury and not for the court. (*Weisner* v. *City of Albany,* 224 App. Div. 239, affd. 250 N. Y. 551.) Here the court, by emphatic direction, precluded the jury from giving any weight or credence to the testimony of defendant's witnesses upon one of the main issues in the case. The court's instructions were tantamount to a direction to the jury to find in plaintiff's favor. In the circumstances, the verdict as rendered by the jury must be set aside and a new trial ordered.

It might be well, also, to call attention to the fact that we find no warrant for the court's direction of a verdict in plaintiff's favor for the entire amount claimed as damage. The items of damage were sharply contested by defendant, and though the

jury may have believed that plaintiff was entitled to prevail, nevertheless the amount of the damage was also a fact question exclusively within the province of the jury. Numerous other errors are claimed by appellant but we deem it unnecessary to refer to them.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

MARTIN, P. J., TOWNLEY, UNTERMYER and DORE, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.