In the Matter of the Claim of MARY S. McCORMACK, Respondent, against NATIONAL CITY BANK OF NEW YORK et al., Appellants.

WORKMEN'S COMPENSATION BOARD, Respondent.

Argued May 14, 1951; decided July 11, 1951.

*Charles P. Barre* for appellants. I. There is no proof of an industrial accident within the meaning of the law. (*Matter of Wilson* v. *General Motors Corp.*, 298 N. Y. 468; *Matter of Daus* v. *Gunderman & Sons, Inc.*, 283 N. Y. 459; *Matter of Lorchitsky* v. *Gotham Folding Box Co.*, 230 N. Y. 8; *Matter of Eldridge* v. *Endicott, Johnson & Co.*, 228 N. Y. 21; *Matter of Hansen* v. *Turner Constr. Co.*, 224 N. Y. 331; *Matter of Fish* v. *Wickwire Spencer Steel Co.*, 258 N. Y. 539; *Matter of Collins* v. *Brooklyn Union Gas Co.*, 171 App. Div. 381; *Matter of Cooley* v. *Heaney Co.*, 249 N. Y. 395; *Matter of Kleid* v. *Carr Bros.*, 300 N. Y. 270; *Matter of Welz* v. *Markel Service, Inc.*, 296 N. Y. 640.) II. There is no competent and probative medical evidence that the death of deceased resulted from an accident, but instead the medical proof relates death solely to natural causes. (*Matter of Carroll* v. *Knickerbocker Ice Co.*, 218 N. Y. 435; *Matter of Williams* v. *Pittsburgh Plate Glass Co.*, 268 App. Div. 334; *Matter of Dyviniek* v. *Buffalo Courier Express Co.*, 296 N. Y. 361; *Matter of Kristiansen* v. *Frank McWilliams, Inc.*, 275 App. Div. 1009, 300 N. Y. 728.)

*Nathaniel L. Goldstein, Attorney-General* (*Gilbert M. Landy, Wendell P. Brown* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent. I. Ample evidence supported the finding of the Workmen's Compensation Board that decedent was disabled and died as a result of accidental injuries which arose out of and in the course of his employment. (*Matter of Kleid* v. *Carr Bros.*, 300 N. Y. 270; *Matter of Bollard* v. *Engel*, 278 N. Y. 463; *Matter of Masse* v. *Robinson Co.*, 301 N. Y. 34; *Matter of Carpenter* v. *Sibley, Lindsay & Curr Co.*, 302 N. Y. 304; *Matter of Connelly* v. *Hunt Furniture Co.*, 240 N. Y. 83; *Matter of Driscoll* v. *Gillen & Sons Lighterage, Inc.*, 226 N. Y. 568; *Matter of Hoffman* v. *New York Central R. R.*

*Co.,* 290 N. Y. 277; *Matter of Welz* v. *Markel Service, Inc.,* 270 App. Div. 15, 296 N. Y. 640; *Matter of Dept. of Taxation & Finance [Thomas]* v. *Cohen,* 298 N. Y. 825; *Matter of Schmitt* v. *Bay Ridge Hosp.,* 277 App. Div. 957.) II. Ample evidence supported the determination of the Workmen's Compensation Board that causal relationship existed between the accident and decedent's disability and death. (*Matter of Altschuller* v. *Bressler,* 289 N. Y. 463; *Matter of Daus* v. *Gunderman & Sons, Inc.,* 283 N. Y. 459; *Matter of Green* v. *Geiger,* 253 App. Div. 469, 280 N. Y. 610; *Matter of Malgieri* v. *General Elec. Co.,* 258 N. Y. 620; *Matter of Ruzsjak* v. *Metal Stamping Co.,* 259 N. Y. 575; *Matter of Rosenberg* v. *Netherland Cab Co.,* 269 App. Div. 914; *Matter of Johnson* v. *Dodds Co.,* 268 App. Div. 840; *Matter of Roblee* v. *New York Tel. Co.,* 235 App. Div. 754; *Matter of Cordero* v. *Hotel New Yorker,* 260 App. Div. 821.)

FULD, J. On the morning of December 18, 1945, Hugh Scott, an elevator operator, had been helping a mechanic repair an elevator in their employer's building. The work completed, except for the installation of a bolt, the mechanic went for a special type of wrench to fasten the bolt, leaving Scott standing in the corridor near the elevator with nothing to do. A few minutes later, Scott was found on the corridor floor, unconscious and on his back, with froth coming from his mouth. The elevator had not been moved and the bolt had not been touched. No one had seen Scott fall, and, when he regained consciousness, he said that he did not know what had happened. He died some two weeks later, the autopsy revealed, from a cerebral hemorrhage caused by the rupture of a pre-existing aneurysm, situated at the base of the brain. The autopsy report also indicated that there were no scars on Scott's face, no marks on his body and no fracture of his skull.

An award to Scott's dependents was made by the Workmen's Compensation Board, and affirmed by the Appellate Division, on the ground that the employee had been the victim of an industrial accident and that his fall had not been occasioned by " any underlying pathological condition ".

While a reviewing court may not substitute its own judgment on the evidence for that of an administrative tribunal, it will not, of course, accept or confirm a determination merely

because made by such an agency. Our study of the present record demonstrates that the finding that there was an accident, far from being supported by substantial evidence, rests wholly upon conjecture. There is no evidence that Scott was working in or about the elevator when he fell, that he struck his head before he fell or suffered any trauma, or that the fall was caused by any exertion or strain — usual or unusual — or by any condition of his employment. Absent such proof, the only reasonable conclusion possible is that the aneurysm ruptured spontaneously and that it was that that rendered him unconscious and caused him to fall to the floor.

The sole item in the record that might conceivably be claimed to support the finding of accident is the testimony of a physician, Dr. David Shapiro — who had made a "casual" examination of Scott immediately after his collapse — that he noticed a slight skin abrasion on Scott's forehead and that, while there was no doubt that the aneurysm could have ruptured spontaneously, there was a *possibility* that the rupture might have been caused by a blow, *if* indeed there had been a blow. There is, as already noted, no proof of any blow, and Dr. Shapiro himself acknowledged that he had "no way of determining" what had caused the abrasion or even when it had been sustained. Quite obviously, the statement of such a possibility, founded as it was upon a hypothesis having no support in the record, is a far cry from proof of any fact, and may not, even when considered alone, be deemed to satisfy the requirements of the substantial evidence rule. And, when viewed in the light of the record as a whole — as, of course, it must be (see *Matter of Stork Restaurant, Inc.,* v. *Boland,* 282 N. Y. 256, 275; see, also, *Universal Camera Corp.* v. *National Labor Relations Bd.,* 340 U. S. 474, 487 *et seq.*; Benjamin, Judicial Review of Administrative Adjudication, 48 Col. L. Rev. 1, 2–3) — there can be no doubt whatsoever that the doctor's surmise of what might have been, may not be regarded as substantial, for opposed to it is not only proof that Scott collapsed while waiting, with nothing to do, for his fellow-employee to return; not only proof that he died of a ruptured aneurysm of long standing; but also positive and unequivocal testimony of two other physicians, experienced neurologists, that the rupture was spontaneous and could not

have been caused by any trauma. (See, e.g., *Matter of Kristiansen* v. *Frank McWilliams, Inc.,* 300 N. Y. 728; *Matter of Fish* v. *Wickwire Spencer Steel Co.,* 258 N. Y. 539; *Matter of Hansen* v. *Turner Constr. Co.,* 224 N. Y. 331; *Matter of Williams* v. *Pittsburgh Plate Glass Co.,* 268 App. Div. 334.)

Cases such as *Matter of Green* v. *Geiger* (253 App. Div. 469, 255 App. Div. 903, affd. 280 N. Y. 610), relied upon to support the award, are not in point. In the *Geiger* case, there was present — what is here lacking — significant proof that, immediately before the employee collapsed of a coronary thrombosis, he had been subject to work involving unusual exertion and physical strain which had put a heavy burden on his already weakened heart. On the other hand, persuasive precedent is furnished by such cases as *Matter of Kristiansen* v. *Frank McWilliams, Inc.* (*supra,* 300 N. Y. 728), *Matter of Fish* v. *Wickwire Spencer Steel Co.* (*supra,* 258 N. Y. 539), and *Matter of Hansen* v. *Turner Constr. Co.* (*supra,* 224 N. Y. 331), in each of which we reversed an award in favor of the claimant because there was no evidence of an industrial accident. In the *Fish* case (*supra,* 258 N. Y. 539), for example, an employee, who had been at work in a factory, was discovered lying unconscious on a cement platform with a cut over one eye. No one had witnessed an accident and no one had seen him fall. It was later ascertained — just as in this case — that death was owing to the rupture of an aneurysm, and — again, just as in the present case — a doctor testified that a blow could have produced the rupture. This court reversed the board's determination " on the ground that the evidence does not show that the death was due to an accident arising out of the employment " (p. 540). So, here, while Scott's collapse occurred " in the course of " his employment, there is no evidence to indicate that his death stemmed from any accident, much less from an accident " arising out of " such employment.

Nor may the determination be rested upon the presumption created by section 21 of the Workmen's Compensation Law. Compensation awards have, it is true, been upheld times without number on the strength of that presumption in cases where there have been obvious signs of violent injury, causing disability, to furnish basis for a finding that the accident, which

no one had witnessed or observed, arose "out of and in the course of" employment. (See, e.g., *Matter of Kleid* v. *Carr Bros.*, 300 N. Y. 270; *Matter of Welz* v. *Markel Service, Inc.*, 296 N. Y. 640; *Matter of Gallagher* v. *Mundett Cork Co.*, 295 N. Y. 576.) The presumption, however, is a limited one, operating, the statute specifies, only "in the absence of substantial evidence to the contrary". Moreover, as this court has frequently ruled, "it cannot be used as a substitute for actual proof". (*Matter of Wilson* v. *General Motors Corp.*, 298 N. Y. 468, 472; see, also, *Matter of Dyviniek* v. *Buffalo Courier Express Co.*, 296 N. Y. 361, 364.) Consequently, where as in the present case, there is no evidence at all of industrial accident or of accidental injury, the lack of such evidence may not be supplied by the presumption; in other words, section 21 may not be availed of, or the presumption utilized, to establish the incident of accident itself. (See, e.g., *Matter of Kristiansen* v. *Frank McWilliams, Inc., supra,* 300 N. Y. 728; see, also, *Matter of Dyviniek* v. *Buffalo Courier Express Co., supra,* 296 N. Y. 361, 364; *Matter of Daus* v. *Gunderman & Sons, Inc.,* 283 N. Y. 459, 466; *Matter of Lorchitsky* v. *Gotham Folding Box Co.,* 230 N. Y. 8, 12; see, also, *Matter of Pinto* v. *Chelsea Fibre Mills,* 196 App. Div. 221, 223.) In any event, even if it were held that the presumption had some proper place in this case, it could not survive the unquestionably "substantial evidence to the contrary" — evidence that Scott's collapse and death resulted from a spontaneous rupture of a pre-existing aneurysm and could not have been caused by any blow or other trauma.

The order of the Appellate Division and the award of he Workmen's Compensation Board should be reversed, with costs in this court and in the Appellate Division, and the claim for compensation dismissed.

DYE, J. (dissenting). When the Appellate Division unanimously affirmed the finding of the Workmen's Compensation Board that the decedent's disability and death were the proximate result of an injury sustained in and by reason of his employment, it placed such factual issue beyond our reach (Workmen's Compensation Law, § 20) except as provided in section 23 of the Workmen's Compensation Law.

The employer and its carrier discern a reviewable question of law based on an alleged erroneous application of the presumption provided for use in an unwitnessed accident case (Workmen's Compensation Law, § 21), it being claimed the proof failed to establish the happening of an accident, absent which the presumption is unavailing. I agree that the presumption may not be used as a substitute for proof of accident and that it is only available in unwitnessed accident cases when the happening of an accident has been established. Here there is affirmative proof of accident giving rise to the presumption that the claim was within the provisions of the Workmen's Compensation Law. What is lacking is " substantial evidence to the contrary ", absent which the presumption must be made effective.

As I see it, this is a typical unwitnessed accident case. The proof establishes that the deceased was found unconscious on his employer's premises during working hours in a place where he had been assigned to do work in the repair of an elevator and that when found his body bore marks of injury; that while engaged in such work, which for the time being was not completed — but only temporarily interrupted for lack of a tool which a fellow employee had gone to get — and while his fellow employee was so absent, a patron of the building found the decedent lying on the floor near the elevator, his tools scattered about him and an oily rag near his hand. A physician who came almost immediately and concededly before decedent had been moved, testified at the hearing that decedent was " entirely unconscious " — " in quite severe shock " — that " there was an area of skin abrasion and discoloration on the right side of the forehead " — which would indicate that " he had received some degree of trauma " — that it " was a mechanical injury of some sort ", and that " there was evidence of severe cerebral concussion ". This witness in his attending physician's report had stated that the accident sustained on December 18, 1945, was a competent producing cause of injury, which statement was repeated in a report filed after decedent's death. When asked his views in light of the autopsy report that death had resulted from the rupture of a pre-existing aneurysm the possibility of contributory traumatic causation was not excluded, but reas-

serted. In the hearing minutes we may read, viz.: '' Q. What did you have in mind, Doctor, when you said in your C64 that the injury received on December 18, 1945, that it indirectly caused the death? A. If this man had a fall and he struck his head, if that were the history that could be determined then I would say that the fall could cause a hemorrhage at the base of the brain. That is, the fall could cause that aneurysm to rupture even though he had an aneurysm there.''

At another point, to use the physician's own language: '' We also know that an aneurysm can rupture spontaneously but it can also rupture from a blow. * * * We don't know just when that aneurysm broke, whether it broke the first day [Dec. 18th when deceased was found unconscious by the elevator] or the second time it happened [Dec. 28th when deceased in attempting to get out of bed became dizzy, fell and struck his head] or the third time [on Jan. 1st when he suffered a convulsion and died].''

No evidence was offered which in any way disproved the existence of the abrasion and discoloration or which might give rise to an inference that it had not accidentally occurred on the job. The employer and the carrier challenge its causal connection giving rise to a question of weight of evidence rather than proof. They produced medical experts who had not seen or treated the decedent in his lifetime but who depended on their professional experience and the report of autopsy to testify that in their opinion, the injury was superficial, did not cause death or contribute thereto but that death was due solely to the spontaneous rupture of the pre-existing aneurysm. The board and the court below were not bound to accept this opinion testimony and reject the claimant's testimony but were entitled to exercise their independent judgment (*People ex rel. Third Ave. R. R. Co.* v. *State Bd. of Tax Comrs.*, 212 N. Y. 472; *Commercial Cas. Ins. Co.* v. *Roman,* 269 N. Y. 451) and this is permissible even in the face of medical opinion that cause of death, whether by accident or natural causes, could not be determined (*Matter of Green* v. *Geiger,* 253 App. Div. 469, 255 App. Div. 903, affd. 280 N. Y. 610). The test of the matter is not what ultimately caused death — in this instance, a massive hemorrhage at the base of the brain — but whether there had been an industrial

accident within the contemplation of the Workmen's Compensation Law. We may not rule out evidence of the obvious head injury as being so insubstantial as to be no evidence and upon which the board was not justified in relying. Such a proposition would, of course, be contrary to every concept of the Workmen's Compensation Law. Many an injury — trivial when suffered by a normally well person — has lighted up a latent pathological condition leading to serious and sometimes fatal results and has entitled the victim or his dependents to compensation benefits. This is as it should be and there is nothing here to warrant making an exception to this well-recognized rule.

The compensation law from the beginning has received, and quite properly so, a liberal interpretation in accordance with its remedial character as a broad social enactment. We have recently ruled that an industrial accident is not to be determined by legal definition " but by the common-sense viewpoint of the average man " (*Matter of Masse* v. *Robinson Co.*, 301 N. Y. 34, 37; *Matter of Carpenter* v. *Sibley, Lindsay & Curr Co.*, 302 N. Y. 304), nor do we think that under the circumstances the award is lacking in proof because the decedent subsequent to regaining consciousness was unable to state how the accident had happened, for absent such statement, there was nonetheless an independent and obvious mark of injury on his forehead which was not explained away. There was proof and enough to sustain the finding of an accidental injury, justifying the presumption that such injury was sustained in and by reason of the employment. Here such presumption was not overcome.

The order appealed from should be affirmed, with costs.

CONWAY, J. (dissenting). I concur with Judge DYE.

The board in its findings determined that the deceased was employed as an elevator operator and helper to the elevator mechanic; that while the deceased was assisting the elevator mechanic in repairing a passenger elevator, at the employer's business building in New York City and was engaged in the regular course of his employment, he accidentally fell and struck his head; that as a result of the fall, the deceased sustained accidental injuries in the nature of a cerebral concussion, rupture of a pre-existing aneurysm and a hemorrhage of the brain resulting in his death on January 1, 1946; that his death

was the natural and unavoidable result of the accidental injuries which he sustained on December 18, 1945, and the consequences and results flowing therefrom; that when found on December 18th at 10:00 A.M., the deceased was lying unconscious on the floor of the second-story corridor of his employer's premises where he was employed; that his body was in a diagonal position with his feet about six inches and his head about two feet from the elevator which he had been repairing, with oily cloths lying about; that there was an area of skin abrasion and discoloration on the right side of his forehead; that the fall which he sustained was accidental and was not caused by reason of any underlying pathological condition or any other inherent factor or condition and arose out of and in the course of his employment. The award was unanimously affirmed by the Appellate Division.

The only evidence offered by the employer and the insurance carrier was the testimony of two doctors who had never seen the deceased and who gave opinion evidence. It was their opinion that the death of deceased was caused by the pre-existing aneurysm and was not the result of an accident.

Doctor Shapiro, who was called when the deceased was found lying on the second floor of the employer's building and who later testified in this proceeding for the claimant, said that when he examined the deceased, there was an area of skin abrasion and discoloration of the right side of the forehead and that the patient was lying on his back. He was then asked whether he could tell from his examination what type of injuries might have caused the abrasion and discoloration. He said: "He might have struck the area. There was a mechanical injury of some sort. I mean, it is hard to tell whether he was struck over the head by a blunt object or hit it against something. You know that abrasions are caused by some degree of injury and, of course, the discoloration also. But, I mean, the nature of the injury — I can't possibly determine by the effect."

Again, he said at folios 393 to 395: "Q. Doctor, is there any medical way of determining whether or not this hemorrhage from which Mr. Scott was suffering from on December 18th came from a prior condition of Mr. Scott or was induced by some outside forces? A. Well, there is no accurate way of stating definitely. We know he had a hemorrhage of the brain. I also

take it for granted you are referring to an autopsy report of which I received a copy of, indicating that the man had a ruptured aneurysm at the base of the brain. We know definitely that aneurysm pre-existed. There is no question about that because it takes an extended period of time for an aneurysm to form. We also know that an aneurysm can rupture spontaneously *but it can also rupture from a blow*. Now, which came first? That is, whether the aneurysm ruptured spontaneously or *he had received a blow of some sort* — I have definitely no way of determining, in all fairness to all parties concerned." (Emphasis supplied.)

In view of (1) those facts and the inferences which the board found flowed reasonably therefrom, (2) the presumption under section 21 of the Workmen's Compensation Law that the claim comes within the provision of the chapter, and (3) the basic rule of administrative law, embodied in section 20 of the Workmen's Compensation Law, that the decision of the board is final as to all questions of fact, we may not under our jurisdiction say that the award was unsupported by any evidence in the record.

The presumption in section 21 has been prescribed by our Legislature by reason of the difficulty in establishing the cause of death in cases, among others, where the person injured dies as a result of an unwitnessed occurrence, so that, as a social problem, his dependents may not suffer because there were no witnesses present. In such cases external injuries and the position of the body when found are facts from which the board may draw inferences which even under common-law rules may not be rebutted as a matter of law by opinion evidence. At common law, the trier of the facts may disregard opinion evidence if his judgment indicates that that should be done or he may give it such weight as he sees fit.

The only evidence here in contradiction of the facts found and inferences drawn by the board is that of two opinion witnesses. That opinion testimony, even if uncontradicted, which was not the case here, was subject to the exercise by the board of its independent judgment. Thus, in *People ex rel. Third Ave. R. R. Co.* v. *State Bd. of Tax Comrs.* (212 N. Y. 472, 485), we said: " * * * Opinion testimony, even if uncontradicted, was subject to the exercise by the trial court of its independent judg-

ment. While it is, speaking generally, true that a jury has not the right, arbitrarily, to ignore or discredit the testimony of unimpeached disinterested witnesses, so far ,as they testify to facts, and that willful disregard of such testimony will be ground for a new trial, no such obligation attaches to witnesses who testify merely to their opinion; and the jury may deal with it as they please, giving it credence or not as their experience or general knowledge of the subject may dictate. (*The Conqueror*, 166 U. S. 110.) * * *.''

Similarly, we said in *Commercial Cas. Ins. Co.* v. *Roman* (269 N. Y. 451, 456–457): `` *`   *   * Even though no testimony was offered by the plaintiff to contradict the testimony of these experts, it was still within the province of the jury to reject their testimony altogether. The weight to be given to opinion evidence ordinarily is entirely for the determination of the jury. * * * '' To the same effect are *Ensign* v. *Travelers Ins. Co.* (193 App. Div. 369, 386–387, affd. 233 N. Y. 521); *Matter of Horton* (272 App. Div. 646, 651, affd. 297 N. Y. 891); *Lipson* v. *Bradford Dyeing Assn.* (266 App. Div. 595, 598); *Shabotzky* v. *Equitable Life Assur. Soc.* (257 App. Div. 257, 260).

Much more so is that the case in workmen's compensation cases since the act was passed as a new step forward in the field of social legislation and originally provided, as it still does (§ 118, formerly § 68), that the board was not to be bound either by common-law or statutory rules of evidence but was to act on the hearing in such manner as to ascertain the substantial rights of the parties.

The case of *Matter of Green* v. *Geiger* (253 App. Div. 469, 255 App. Div. 903, affd. 280 N. Y. 610) seems to me clearly in point. There the medical opinion witnesses testified that it could not be determined whether the deceased came to his death by accident or natural causes. Despite the non-opinion evidence to the effect that the deceased had sustained an accidental injury, the board *followed the doctors and found there was no accident.* The Appellate Division, in an excellent opinion, reversed and sent the proceeding back to the board, saying (253 App. Div., p. 471): `` The record indicates that the Board thought that the evidence would not justify a finding of accidental death in view of the testimony of the health officer that he did not know

whether the alleged accident was indirectly the cause of death. We infer that if the physician had testified that in his opinion the exertion did aggravate the heart condition and indirectly bring about death, the Board would have felt justified in making a finding to that effect. It is apparent that the physician could not thus testify with certainty. The law does not require proof of such positiveness. It is sufficient if from the facts a reasonable *inference* arises that the exertion caused the death '' (emphasis supplied). After a rehearing, the board found for the claimant and its award was affirmed by the Appellate Division (255 App. Div. 903) and this court (280 N. Y. 610). The medical testimony in the *Green* case (*supra*) was substantially the same as that of Doctor Shapiro here and the board, in here finding that there was an accident, drew the inference suggested in the *Green* case. The board did not have to believe the opinion testimony of the insurance carrier's medical witnesses as against the facts and inferences warranted by the other evidence. See, also, *Matter of Welz* v. *Markel Service, Inc.* (270 App. Div. 15, affd. 296 N. Y. 640); *Matter of Lauer* v. *Y. M. & W. H. A. of The Bronx* (266 App. Div. 42, 269 App. Div. 870, motion for leave to appeal denied 295 N. Y. 990); *Matter of Hoffman* v. *New York Central R. R. Co.* (290 N. Y. 277).

The order appealed from should be affirmed, with costs.

LOUGHRAN, Ch. J., DESMOND and FROESSEL, JJ., concur with FULD, J.; DYE, J., dissents in opinion in which LEWIS, J., concurs; CONWAY, J., concurs with DYE, J., in a separate opinion.

Order reversed, etc.