In the Matter of BOSPECT REALTY CORP., Respondent, against JOSEPH D. MCGOLDRICK, as State Rent Administrator, Appellant.

First Department, March 30, 1954.

*Beatrice Shainswit* and *Robert H. Schaffer* for appellant.

*Irving J. Kaufman* for respondent.

BERGAN, J. The court at Special Term has annulled a determination of the State Rent Administrator which affirmed on review an order of the Bronx local rent administrator establishing a maximum rent for an apartment owned by petitioner at $32 a month as of May 1, 1950. The court's order required the State Administrator to issue a direction to decontrol the premises. From this determination made under article 78 of the Civil Practice Act, the State Rent Administrator appeals.

The theory of decision of decontrol underlying the order at Special Term is that the landlord converted the premises from a nonhousing to a housing accommodation after February 1, 1947, and that the premises constituted an additional housing accommodation created by conversion after May 1, 1950, involving substantial structural alterations.

The statute (State Residential Rent Law, § 2, subd. 2, par. [g]; L. 1946, ch. 274, as amd.) exempts from rent control housing accommodations " created by " a " change " from a " non-housing to a housing use " or which are additional housing accommodations " created by conversion " after February 1, 1947, and as to conversions after May 1, 1950, requires the State Rent Commission to issue an order of decontrol if the conversion involves " a structural change " with " substantial alterations or remodeling ". Subdivision 1 of section 11 of the regulations of the commission implements the decontrol procedure for conversions after May 1, 1950.

The proceedings before the local administrator in The Bronx were commenced on a complaint sworn to October 5, 1950, by the tenant's wife that the rent of $75 a month charged was excessive and was based on a commercial lease in which the occupancy was to be " only " for " dressmaking and sewing shop and office ".

This complaint alleged that the tenant worked in a radio and television shop and had previously attended a radio and television school; that the wife worked as a maid in a hotel; that the premises were never used for any commercial purposes of any kind; that they were wholly unsuited for any business purpose and that the landlord required as a condition of getting the apartment for living purposes that the tenant rent it as a " commercial unit " although " he knew as well as we that we never intended to use the apartment as a commercial unit ".

On January 17, 1951, the Attorney-General instituted an action in the name of the People of the State against the landlord in which the complaint alleged that the maximum legal rent for the apartment in question was $22 a month, whereas the landlord was receiving $75 a month; that the landlord was violating the statute and the regulations, and demanding an injunction; restitution of the excess to this tenant and another tenant not here involved and additional statutory damage.

The Attorney-General described this action in his brief before the court as one instituted " in the interest of the public welfare " and stated that the injunction was required " for the purpose of aid in law enforcement ". The court granted a temporary injunction on March 14, 1951; but the condition imposed was that the tenant pay into court the difference between the legal rent and the $75 provided in the lease. This has not been done.

This action has never been tried, and nothing has been done with it since the decision of the motion for a temporary injunction, but on May 2, 1951, and on the basis of the original complaint filed by the tenant the previous October, notice was given to the landlord that the " Local Administrator proposed to issue an order establishing the maximum rent " at $32 a month, and requesting the landlord to answer certain questions in relation to the accommodation; in default of which the landlord was advised that the administrator " may determine the proceeding on the basis of the evidence presently in the record ".

The landlord filed an " answer to application " on May 9th in which reference was made to the affidavits on file in the injunc-

tion action and which answer pleaded that prior to the lease to this tenant the premises were "never" used as a self-contained residential unit; were not fit for residential purposes; and were rented in good faith for business purposes, but were "wrongfully converted" by the tenant to a "residential use".

The answer under oath further stated that the landlord, at "great cost" had rehabilitated the rental unit, "installed" plumbing and heating "equipment" and then "rebuilt, replastered and repainted" walls and ceilings; that the cost of the work amounted to more than $900; that the rental unit was "newly created" on May 1, 1950, "at extremely high cost".

Although the landlord then contended, and had previously contended with vigor and particularity, that the rental to the tenant was for a business purpose, its answer alleged that it had "been absorbing" the "cost of gas" used in the premises — an argument of absorption which seems to us somewhat out of harmony with a landlord's belief that the premises were being used "only" for business and that the use by the tenant for housing purposes was a "wrongful conversion".

Concurrently with this answer the landlord made a separate application to the administrator for "decontrol of housing accommodations" created "by conversion", but admitted that this application was "inconsistent with the contention of the landlord that the premises are business premises". The admission was made because the landlord felt "compelled to make the application for decontrol" in defense of its "property rights". The landlord stated that it would submit bills "in support of its application" to decontrol and complained that the administrator had "not afforded the landlord an opportunity to present its documentary proof".

The local administrator at once began his own investigation into these allegations of structural change and use of the property and found that the superintendent of the building had occupied the premises in question and an adjoining unit for ten years until just before the landlord had separated the units in May of 1950, and that the separation merely "consisted of eliminating an opening between both apartments".

The report to the administrator from the examiner stated there has "not been a structural change in the residential unit" nor a conversion "which has resulted in additional housing accommodations". Upon this report the local administrator made a finding on May 21, 1951, that there has been no structural change and no conversion which has resulted in "addi-

tional housing accommodations ''. He established the maximum rent at $32 a month as of May 1, 1950.

The landlord appealed this determination to the State Rent Commission. The petition on the appeal again repeated under oath (June 6, 1951) that the rental was '' for use as a business premises '' and that the conversion to residential use was the '' unilateral act of the tenant '' and stated a '' new wall was erected '' resulting in the '' creation '' of a '' new apartment ''.

The landlord complained of the failure of the local administrator to afford a hearing '' in which the question of good faith of the parties could be examined ''. Reversal of the order of the local administrator was sought, but no hearing before the State Rent Commission was specifically asked on that review.

In answer to this application on review the tenant's wife swore to a new affidavit. She stated specifically that '' no new wall was put up by the landlord which created additional housing accommodations '' and that the apartment '' was and has been in substantially the same condition for many years '' and that the renting of the apartment '' for alleged business purposes '' was a '' device '' to enable the landlord to obtain a higher rental.

The State Rent Administrator affirmed the local administrator's order with a memorandum stating his reasons. In the article 78 proceeding instituted by the landlord an affidavit from the superintendent of the building who formerly occupied the apartment in conjunction with the adjoining apartment was presented to the court by the landlord in support of the claim that structural changes had been made. He swore that the rehabilitation of the apartment '' involved refitting the kitchen and bathroom with a stove, refrigerator, kitchen sink, toilet bowl, bathroom sink and bathtub ''.

Notwithstanding the descriptive words employed in this supporting affidavit to the effect that the apartment was newly equipped with a '' stove '', a '' refrigerator '', a '' kitchen sink '', and a '' bathtub '', the landlord's president, as part of the same application before the Special Term, continued to swear unequivocally that the '' letting  *  *  *  was for business purposes only '' and that the '' first knowledge '' the landlord had of a use other than for business purposes was the proceeding before the local administrator.

The Special Term swept through this involved and highly controverted factual pattern to annul the determination and reverse the decision of the State commission.

In order for the Special Term to decide as it did that it " clearly appears that the unit was converted from non-housing to housing accommodation " it necessarily had to have ruled as a matter of law that there was no substantial evidence on the record considered as a whole in support of the State Rent Commission's determination and in support of the local rent administrator's findings. (*Matter of Stork Restaurant* v. *Boland,* 282 N. Y. 256; *Matter of Miller* v. *Kling,* 291 N. Y. 65; *Matter of Tompkins* v. *Board of Regents,* 299 N. Y. 469; *Matter of Avon Bar & Grill* v. *O'Connell,* 301 N. Y. 150; *Matter of McCormack* v. *National City Bank,* 303 N. Y. 5; *Edison Co.* v. *Labor Board,* 305 U. S. 197.)

A careful search of this record does not deprive the administrative determination of adequate support; rather the record must be read as showing substantial evidence in support of the factual finding of the administrator. To say that there may also be substantial evidence the other way in support of the landlord's contention is not to say enough to permit a court to annul the administrator's determination; in such a disputed factual situation the rule is thoroughly settled in New York that judicial confirmation must follow.

We would at once confirm upon the record before us were it not for a procedural problem in relation to the controverted question of the " substantial " nature of the " structural change " purported to have been made to bring the case within paragraph (g) of subdivision 2 of section 2 of the act.

The landlord had asked opportunity to present bills before the local administrator and complained on its appeal to the State commission that it had not been afforded a hearing. The requirements of procedural due process seem to us to indicate that a hearing thus requested ought to have been afforded; and upon the argument in this court the State administrator indicated a willingness to allow a hearing if the case were remitted.

We have taken pains to sift through in rather considerable detail a case involving a single small rental unit because we regard as important the principles which this appeal calls up; the scope of judicial review on a disputed factual issue before an administrative agency; the need to afford opportunity for proof before the administrator when that is indicated by the requirements of due process; and finally the public interest in the effect of what seems to be an irreconcilable conflict in statements under oath prepared with deliberation and reiteration and designed to seek to bring about favorable determinations

by a public agency. We think on the administrative rehearing there ought to be plenary and decisive inquiry into the underlying facts.

The order of the Special Term should be reversed and the order to be entered should direct the remission of the proceeding to the appellant for his further determination on a hearing that shall allow petitioner full opportunity to present its proof, with $20 costs to appellant.

PECK, P. J., CALLAHAN, BREITEL and BASTOW, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to the appellant, and the order to be entered shall direct the remission of the proceeding to the appellant for his further determination on a hearing that shall allow petitioner full opportunity to present its proof. Settle order on notice.