In the Matter of COUNTY OF NASSAU, Petitioner, v STATE OF NEW YORK PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent, and NASSAU CHAPTER CIVIL SERVICE EMPLOYEES ASSOCIATION, LOCAL 830, A.F.S.C.M.E., LOCAL 1000, AFL-CIO, Intervenor-Respondent.

Second Department, September 17, 1984

### APPEARANCES OF COUNSEL

*Bee & DeAngelis* (*Peter A. Bee* of counsel), for petitioner.
*Martin L. Barr* (*Jerome Thier* of counsel), for respondent.

### OPINION OF THE COURT

*Per Curiam.*

The principal question to be answered here is whether the record contains substantial evidence to support the determination of the Public Employment Relations Board (PERB) that the petitioner committed an improper labor practice when it exercised its contractual right to order a shift in working hours for its probation officers following the filing of a grievance on behalf of the officers pursuant to which they sought overtime payment for overtime worked. We answer the question in the negative.

The facts are as follows.

Prior to April, 1979, probation officers employed by the petitioner County of Nassau were required to perform "night report duty" on one night each week after completion of their normal 8:15 A.M. to 4:00 P.M. work shift, without any form of additional compensation. In April, 1979, a request was made for contractual overtime pay for night report duty. Following denial of the request, a grievance was filed, which grievance was ultimately withdrawn when the local union president agreed to a proposal that probation officers on night duty receive compensation in the form of time off.

In August, 1981, several of the probation officers renewed their request for overtime pay for night shift duty. The requests for overtime were denied, and on August 17, 1981, a class-action grievance was filed on behalf of all probation officers required to perform night report duty, demanding that they receive, *inter alia,* overtime pay for such duty.

On September 17, 1981, an interdepartmental memorandum was issued by the Deputy Director of the Probation Department changing the shifts for all probation officers for the day on which they were assigned night report duty. The change order, effective October 5, 1981, altered the shift for employees assigned to night report duty so that the probation officer reported for work at 12:15 P.M. instead of 8:15 A.M. In that way, overtime payments were either eliminated or, at the least, drastically reduced.

The intervenor-respondent Civil Service Employee Association (CSEA) then filed an improper employer practice charge alleging that the afore-mentioned change in shift was put into effect "as a direct result of the affected employees exercising their right to file a grievance in accordance with the rules and procedures set forth in the collective bargaining agreement * * * in an attempt to interfere with * * * their rights guaranteed in Section 202 of the Act [the Civil Service Law] * * * and as such, constitutes a violation of Section 209-a.1 (a) of the Act * * * [and] an attempt to discriminate against the Probation officers * * * [in] violation of 209-a.1 (c) of the Act".

In due course, a hearing was held on the charge. The hearing officer concluded that the shift-change order was motivated by a desire to coerce the affected employees with respect to their exercise of a protected right, i.e., their right to file the overtime grievance, and for that reason constituted an improper employer practice. Respondent PERB adopted the hearing officer's findings and directed the petitioner to rescind the shift-change order.

It is significant that PERB concedes that the petitioner had every right to change its employees' shifts. That concession is premised upon section 4 of the parties' collective bargaining agreement which, *inter alia,* specifically reserves to the County of Nassau the right "to regulate work schedules * * * to relieve its employees from duty because of lack of work or for other legitimate reasons * * * [and] to determine the methods, means and personnel by which governmental operations are to be conducted". With respect to a change in shifts, section 18-2 of the parties' contract states: "No employee shall be required to work a shift which differs from his assigned shift, without two weeks written notice prior to the change, except in case of emergency".

At all times, the petitioner has maintained that budgetary considerations were the sole motivation behind its action in ordering the shift changes. As early as April 20, 1979, the Chief Deputy Director of Probation sent the following interdepartmental memorandum to the president of the CSEA, Probation Unit:

"SUBJECT: Overtime Reimbursement

"In answer to your memo of April 18, 1979, please be advised that I have spoken at length with Mr. Milone relative to your suggestion. He wished me to call to your attention the fact that due to severe budgetary crisis, he cannot at this time grant requests for overtime. There is just so much money in the budget and none has been allotted for overtime. If demands are made upon us for more money than there is, it will result in the loss of Probation personnel to make up the difference. If the officers still insist on overtime then we will have no alternative but to change the starting hours of personnel using shifts, and to enforce compliance we may have to install time clocks.

"This matter is very disturbing to Administration due to the fact that we struggled so desperately to save personnel at the beginning of the year when great budget demands were made upon us.

"We sincerely hope that personnel will work with us, and we, in turn, will attempt to work with you to iron out the differences".

Thus, more than two years before the class-action grievance relating to overtime pay was filed on August 17, 1981, petitioner made it clear that budgetary considerations made it impossible for it to pay cash for overtime, and that, if the probation officers were to insist on overtime pay, it would have no alternative but to change the starting hours of personnel shifts. In short, long before the class-action grievance was filed, petitioner explained its budgetary situation to the probation officers and put them on notice as to the steps it would be forced to take in the event that the officers pursued a claim for overtime pay. Without question, the change in employee shifts by petitioner, which was authorized by the contract between the parties, was a legitimate, lawful act. However that may be, an otherwise legitimate act or course of conduct of a public employer may, if substantially motivated by a desire to coerce its employees with respect to protected union activities, or contract rights, constitute an improper employer practice, which PERB has jurisdiction to enjoin (Civil Service Law, § 209-a, subd 1, par [a]; §§ 202, 205, subd 5, par [d]; *Matter of City of Albany v Public Employment Relations Bd.,* 57 AD2d 374, affd 43 NY2d 954).

This being a judicial review of a determination rendered by an administrative body after a hearing, "the issue presented for the court's consideration is limited to whether that determination is supported by substantial evidence upon the entire record" (*Matter of Purdy v Kreisberg,* 47 NY2d 354, 358). Hence, the question confronting us is whether PERB's determination that the shift changes would not have been ordered but for antiunion animus is supported by substantial evidence. After a careful review of the record, we conclude, as previously stated, that it is not so supported.

Substantial evidence consists of proof of such quality and quantity as to persuade a fair fact finder that from that proof as a premise, a certain conclusion can reasonably be drawn. "A court reviewing the substantiality of the evidence upon which an administrative agency has acted exercises a genuine judicial function and does not confirm a determination simply because it was made by such an agency (*Matter of McCormack v National City Bank,* 303 NY 5, 8-9). In final analysis, substantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably — probatively and logically" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176, 181).

In this case, the proof established that representatives of CSEA were consistently told that budgetary limitations were such that, if an overtime grievance, which could lead to payment for overtime, were pursued, shift changes would be necessary; that is, that it was impossible to make cash payments for overtime work. Petitioner offered additional evidence that the shift changes were, in fact, ordered as a money-saving measure designed to counter the effect that a successful pursuit of the overtime grievance would have had on the budget, and not as retaliation for the filing of the grievance. Basing its decision on the fact that the county represented that it would have to effect shift changes if a grievance were filed, and did in fact effect shift changes after a grievance was filed, and nothing more, PERB concluded that the shift changes would not have occurred but for antiunion animus and that petitioner was motivated by a desire to retaliate against the probation officers for pursuing their contractual rights by means of a grievance. There is just no evidence in the record to suggest that the shift changes were motivated by anything other than legitimate fiscal concerns and the inference that petitioner's action was the result of antiunion animus is not justified on the basis of the record before us. It is true that the petitioner did not undertake any shift change until after the grievance was filed. But that does not mean that its conduct must be viewed as an act of retaliation.

Until such time as the probation officers insisted upon overtime pay, petitioner had no need to order shift changes to protect its budget. When the grievance was filed and petitioner was faced with the prospect of having to pay overtime, it was called upon to act for its own protection. It can hardly be denied that it acted legitimately in exercising its contract right to order shift changes so as to avoid payment of overtime. Petitioner is not to be punished or labeled as having committed an improper employer practice for acting within its rights.

Finally, we note that *Matter of City of Albany v Public Employment Relations Bd.* (57 AD2d 374, *supra*), is readily distinguishable from the case at bar. There, the court pointed out that the petitioner, City of Albany, did not contest any of the hearing officer's findings of fact and apparently conceded that (p 376) "Maikels [the Public Works Commissioner] knew of Strokes' union activities, that he was hostile to Strokes and Council 66, *and that he would not have fired Strokes but for the latter's protected activities in connection with Council 66*" (emphasis supplied). In upholding PERB's finding that the city had acted improperly, the Appellate Division, Third Department, said: "To defeat any discharge of an employee, the antiunion animus must not only exist on the part of the employer, but it must also be *the* reason for the dismissal in question" (*Matter of City of Albany v Public Employment Relations Bd., supra,* p 377; emphasis supplied). In the case at bar, the record simply does not support the conclusion that antiunion animus was *the* reason for the shift changes. On the contrary, the record supports the conclusion that petitioner acted to protect its finances as it had the right to do.

Inasmuch as the determination before us was not founded on substantial evidence, it should be annulled.

GIBBONS, J. P., BROWN, NIEHOFF and BOYERS, JJ., concur.

Petition granted, determination dated January 28, 1983 annulled, on the law, without costs or disbursements, and charge dismissed.