In the Matter of the Claim of EMMA PEPLOE, Respondent, against BURNS BROS., Appellant.

WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, December 30, 1952.

*A. Harold Frost and Bernard Jenkin* for appellant.

*Nathaniel L. Goldstein, Attorney-General (Roy Wiedersum* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

*Lewis C. Leighton* for claimant-respondent.

FOSTER, P. J.   This is an appeal from an award of death benefits made by the Workmen's Compensation Board to the widow of a deceased workman.

Decedent worked as a yardman for self-insured employers who were in the coal business.   Just before the incident he had been engaged in loading a truck.   The coal was kept in pockets, some forty feet high, and when a truck was to be loaded a chute was opened over the truck for the coal to flow through.   There is no proof that the coal jammed in the chutes but there is proof that when the coal became low in the pockets a yardman had to get in the pocket and shovel the coal to the chute.   To get in a pocket a man had to scale the outside and let himself down inside.   Ordinarily a life belt was used, but decedent did not use one on the occasion in question.

When last seen conscious decedent was loading a truck.   When next seen his body was coming through, or had just come through, a chute, and was resting on about five hundred pounds of coal on the ground.   The truck in the meantime had been loaded and passed on.   There was some loose testimony that he was dead when found.   However there was no one there competent to say whether he was dead or not, or to distinguish between death and unconsciousness.   The record is blank as to precise time of his death.   His body was removed to the office of the chief medical examiner of New York City, where an autopsy was performed.

The autopsy revealed that the cause of death was acute myocardial infarction, coronary thrombosis, and acute alcoholism as a contributing factor.   It also revealed generalized arteriosclerosis and heart disease which had existed for some time.

If there is medical proof in the record sufficient to sustain a finding that trauma, such as a fall, played any part in decedent's death the case would present no difficulty. The incident was unwitnessed, but the circumstances certainly justify a finding that decedent suffered a fall of some kind, even without the aid of the statutory presumption. Whether a fall killed him, or whether he died from natural causes and then fell, is the problem.

Our difficulty rests with the medical testimony. A physician called by the claimant, who had never seen decedent, in answer to a hypothetical question gave his opinion that if decedent fell forty feet such a fall was causally connected with his death. Later he said that if the fall was anything above a foot there was still, in his opinion, causal connection. He also testified that in his opinion death was caused by a coronary infarction; the acute infarction arose from a breaking off of a thrombus that already existed in the heart. The formation of the thrombus found might have taken from one second to two weeks.

The physician who performed the autopsy, an assistant medical examiner for the City of New York, found no evidence of trauma, external or internal. In his opinion death was due to natural causes. The thrombus he found had not broken off; if it had it would have been an embolus. The infarction in the myocardium of the heart was caused by the thrombus closing off a blood vessel and denying a supply of blood to the heart. The infarct was simply dead tissue. He did not recognize the term '' coronary infarction ''. A minimum of from twelve to twenty-four hours was required to produce such a condition.

Another physician called by the employer testified in substantial accord with the medical examiner who performed the autopsy.

We recognize of course that there is wide room for differences in medical opinions and that such differences are ordinarily and finally resolved by the board in compensation cases. In this case however there are certain differences so fundamental and so incredible that we feel the substantial evidence rule has not been satisfied as to causal relation. Perhaps there is such a condition as coronary infarction. We do not know. It strains credulity however to believe that there can be a difference of opinion between physicians as to such fundamental medical terminology. But there is even greater difficulty in accepting the opinion of a physician, who never saw decedent, that a thrombus broke off and caused the infarction, when the only physician who actually saw the thrombus testified positively that a breakage did not exist. While opinion evidence is fre-

quently of great value, and often the only evidence available, it must have substantial probative force to sustain a finding of causal relation; otherwise the rights of parties can be made to depend upon an opinion simply because it is an opinion.

The award should be reversed and the matter remitted to the Workmen's Compensation Board for further consideration if it is so advised, and with costs to the appellant.

BREWSTER, BERGAN and HALPERN, JJ., concur.

Award reversed, on the law, and the matter remitted to the Workmen's Compensation Board for further consideration if it is so advised, and with costs to appellant against the Workmen's Compensation Board.