In the Matter of the Claim of PATRICK HAYES, Respondent, against S. STROOCK & Co., INC., et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, March 31, 1954.

*Albert P. Thill* for appellants.

*John W. Sweeney* for claimant-respondent.

*Nathaniel L. Goldstein, Attorney-General* (*Harry Pastor* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

BERGAN, J. The issue of law here before us is to determine whether there is substantial evidence, when the medical record is considered as a whole, to support an award by the Workmen's Compensation Board. The law problem that thus arises on what is " substantial " medical proof when the case is seen as an entity is in an area not easily defined.

Records which have not been regarded as providing substantial evidence in support of awards are of some help in casting the line, but each case brings with it its own need for evaluation of whether the proof, including the opinion evidence of the physicians, gives substantial support to the findings reviewed.

Two recent cases give perspective to this problem. In *Matter of Kopec* v. *Buffalo Brake Beam-Acme Steel & Malleable Iron Works* (304 N. Y. 65) there was medical opinion by a single physician that he believed that an accident aggravated claimant's tuberculosis; the other medical proof in the record was overwhelming the other way and was based on findings of numerous chest and lung specialists. The physician who expressed the opinion in support of accidental aggravation had previously stated the tuberculosis was caused by occupation; and his opinion that the accident aggravated it was thought by the court to have been inconsistent and variable (p. 69), and not to afford a substantial ground to support the decision of the board (p. 72).

In *Matter of Peploe* v. *Burns Bros.* (281 App. Div. 134) the opinion of a physician was given in the record that the decedent's fall in the course of employment had caused a coronary infarction which arose from the breaking off of a thrombus already existing in the heart; but the demonstrated proof on autopsy was that the thrombus had closed off a blood vessel and had not broken off; that there was no evidence of internal or external trauma, and that in the opinion of the physician performing the autopsy death was due to natural causes. The determination of the board based on a finding of association between the fall and the death was reversed because it was not supported by substantial evidence.

The mere expression of medical opinion, even if given in unequivocal language and firm tones, may not always afford a substantial basis for a finding in support of a compensation award where in the context of the record it may be demonstrated to the court that the board in crediting it did not use a considered judgment and has rejected relevant evidence which a reasonable mind would accept as adequate. There is, on judicial review, " ' sufficient flexibility ' " to authorize correction of " ' ascer-

tainable abuses ' ''. (See decision and authorities cited in *Matter of Kopec* v. *Buffalo Brake Beam-Acme Steel & Malleable Iron Works, supra,* p. 71.)

There is, of course, adhering to this problem the question that always adheres to it, as to what one judge or another, or one administrator or another, would mean by words like '' substantial '' and '' considered judgment '' and '' adequate '' and '' ascertainable abuses ''; but the process of decision involves reference to these terms and requires an adjudication guided by a professional tradition in which these words or others like them, and the concepts they imply, are part of the material in constant judicial use.

It is not always enough, therefore, to support an award that there be some expression of medical opinion in the direction the award takes; such opinion may be so dislocated in reference to all the other medical proof which the board, and a court on review, must consider, that it affords no sure foundation to decision.

In this background we review the present findings of the board that as the result of an accident claimant suffered '' shortness of breath and aggravation of arteriosclerotic heart disease ''. The accident itself, as described and found, was that while helping to lift a heavy bale on January 17, 1949, claimant sustained a strain of the ligaments of his chest.

The first medical issue raised is whether claimant has the '' heart disease '' found by the board. His own physician testified that in his opinion claimant has arteriosclerotic heart disease. But this physician referred claimant to a heart specialist who, on the basis of two detailed examinations, including electrocardiograms, expressed the opinion claimant is not suffering from heart disease. Another physician who examined the claimant and made electrocardiograms also expressed the opinion he did not have heart disease. No finding of the existence of heart disease was made by any of the three State physicians who examined claimant for the board and filed written reports of their examinations.

The claimant's physician who testified in support of his diagnosis of heart disease was unable to demonstrate the existence of this disease from stethoscopic sounds or other observation of the heart action, and himself made no electrocardiogram examination. He had access to the electrocardiograms made by the heart specialist to whom he had referred the claimant, but he was unable to demonstrate from those anything to indicate heart disease.

One of the series of electrocardiograms taken by the heart specialist was marked, for each examination, " ' after exercise ' ". The claimant's physician admitted that the electrocardiogram marked " ' after exercise ' " was " within normal limits ". He then undertook to speculate on the techniques followed by the heart specialist to whom he had referred claimant. He expressed the opinion that either the claimant " was not subjected to very much exercise " or the electrocardiogram was taken at a sufficient time after exercise to " permit his heart to be restored to its normal rate."

The heart specialist was then recalled. He testified he had been practicing cardiology since 1934 and was a consultant in cardiology in several hospitals. He gave exact testimony of the technique followed in examining the claimant and in making the electrocardiograms. The two examinations were made several months apart. " The pattern of the second looked exactly the same as the first."

Claimant was given an exercise toleration test equivalent to the climbing of one flight of stairs, consistent with his age and weight; and the second electrocardiogram " was taken within a two-minute period following the exercise to determine whether or not that exercise would produce a pattern of coronary insufficiency." The second electrocardiogram " was an absolute normal pattern " and the blood pressure and heart rate response to that exercise were also taken. In the opinion of the specialist this response also " was entirely normal."

Against this sort of precise testing the claimant's doctor's views were expressed in vague generalities. He said he did " just a simple exercise test " and that he found the test " is not normal ", meaning, he said " a delay " in " return." When asked to be specific about the reaction to this test he said " I have not got a record of that." He continued in the expression of the further generalities, that the claimant's heart " is not normal " and does not " respond " as " a normal heart ".

Claimant's physician based this view that heart disease existed on two main observations: first, that claimant suffered a " shortness of breath "; and second, that his claimed subjective symptom of pain was relieved on the administration of nitroglycerin.

But the shortness of breath, which was also observed by the cardiac specialists, was, in the absence of any cardiac findings attributed to claimant's marked obesity, a weight of 214 pounds considered against a height of 5 feet, 10 inches, and considered also in the background of his age, which was 65; and to the use

of from 20 to 30 cigarettes a day. It would be reasonable, so the record shows, to expect shortness of breath to accompany these conditions and practices.

The specialist also testified that reaction to nitroglycerin is not a safe cardiac diagnostic test since the reaction could be attributed to other causes of pain, such as pylonic spasm; and on being recalled and further examined the claimant's physician said nitroglycerin was '' not an infallible test '' and admitted its use in other diseases. Before the specialist had testified to the variable value of nitroglycerin in diagnosis, claimant's physician had said that '' the thing that influenced me is medication '' and that the claimant's reaction to nitroglycerin '' further clinches the diagnosis in my own mind.''

If the proof that claimant has heart disease is thin, the proof that its course was accelerated by the lifting of the bale is even more tenuous. His doctor's basis for this association is that before the accident he '' never complained of shortness of breath '' and since the accident the shortness of breath has '' become progressively worse ''. The same generalities which characterized the medical view of the existence of the heart disease marked his association of it with the accident.

At one point he summarized his opinion by saying that the heart '' cannot meet the same demands '' that it could '' before the accident ''. And when claimant's attorney asked whether he '' apparently '' felt '' if he had not had the accident he may never have reached the stage which he has now '' the physician again generalized by saying '' I wouldn't say never '', but he was '' almost certain '' that claimant would have been able to continue on his job for '' a period of employment ''.

He said, finally, in answer to a question, that he would not discount the accident as a competent producing factor of claimant's '' present condition ''; that '' I believe it has a lot to do with it.''

Since it does not demonstrate clearly how in this case the accident caused any substantial change in the heart lesion, assuming its existence, we treat the testimony of this physician as offering no substantial medical foundation, when the medical record is read as a whole, for the finding of the board that the lifting of the bale was an accident which caused the '' shortness of breath '' or the '' aggravation of arteriosclerotic heart disease.''

The award should be reversed and the case remitted to the board for its finding of the duration of the disability caused by

the strain without regard to aggravation of arteriosclerotic heart disease, and with costs to appellants against the Workmen's Compensation Board.

FOSTER, P. J., COON, HALPERN and IMRIE, JJ., concur.

Award reversed and the matter remitted to the Workmen's Compensation Board for its finding of the duration of the disability caused by the strain, without regard to aggravation of arteriosclerotic heart disease, with costs to the appellants against the Workmen's Compensation Board.