In the Matter of the Claim of KATHRYN SLEATOR, Respondent, against NATIONAL CITY BANK et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, February 3, 1955.

*F. Walter Bliss* and *Warner M. Bouck* for appellants.

*Nathaniel L. Goldstein, Attorney-General* (*Harry Pastor* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

FOSTER, P. J. This is a heart case. The Workmen's Compensation Board has found that " Due to unusual effort, strain and exertion under unfavorable atmospheric conditions, superimposed upon a severe gross pre-existing cardiac pathology, [decedent] sustained accidental injuries in the nature of an occlusive coronary arteriosclerosis, which caused his collapse and death on September 30, 1948." Appellants challenge the finding the decedent was under unusual effort and strain and assert that his work had nothing to do with his death.

Decedent was employed as an engineer in the building where the employer bank operated its business. For some time prior to his death he suffered from a severely diseased heart and coronary arteries. As one physician, who had attended him, expressed it : " he had everything in the world the matter with that heart, both within and without the heart." At one time prior to his death this same physician had attended decedent at his place of work and found him practically pulseless. Two hypodermic injections were given decedent and the physician stayed with him until his pulse returned to normal. This testimony focuses attention on the fact that decedent was living close to death and tends to support appellants' theory that he died from causes unrelated to his work; but it also supports the conclusion that any strain, however slight, might well cause a fatal heart attack. The employer was well aware of decedent's condition, and apparently decedent had the eager and willing assistance of his coemployees whenever he needed help.

During the early part of the afternoon of the day the incident occurred he exhibited symptoms which may have been of cardiac origin, and he rested for a time in the rest room provided by the employer. Some time between two and three o'clock in the afternoon it was brought to the decedent's attention that some of the radiators and steam pipes in the building were leaking. Apparently steam was not supposed to be on in the building at that time of year (September), but it was nevertheless, and in one place over a stairway leading to the boiler room steam was escaping and hot water was dripping on the stairway to such an extent that a coemployee preferred not to use it. That an emergency of some sort existed may be inferred from the fact that this coemployee jumped over a part of the

stairway to avoid the dripping hot water, and was also running around trying to enter the boiler room through another entrance which he found blocked by garbage cans.

This same coemployee testified that decedent called to him for assistance when steam was discovered in the pipes and it was also found that leakage existed. In response to this call he tried to get to the boiler room through an entrance other than the stairway just mentioned. In the meantime decedent, who was in the boiler room said he was going to check the main steam line. Finding the other entrance to the boiler room blocked the coemployee ran back to the stairway and as he got to the top step he heard a thud, and then saw decedent on the floor. There was some blood at the back of decedent's head and a towel was placed under it. Whether decedent was then dead seems to be uncertain, but at any rate he was dead when a physician arrived. An autopsy was performed, which, aside from indicating the extensively diseased condition of decedent's heart and coronary arteries, revealed a small laceration in the scalp.

One physician called for the claimant gave his opinion that decedent died from a ventricular fibrillation of the heart. He was also of the opinion that decedent had a severe fall, and did not just slump to the floor from an ordinary collapse, because of the thud which the coemployee heard and the wound in the scalp. Although not directly expressed it seems to have been this physician's opinion that decedent fell from a ladder. There was a ladder resting against a pipe, the base of which was rather close to the place where decedent's body lay, but dust on its rungs would seem to negative the possibility that decedent may have actually used it.

Another physician called for claimant said that the situation which confronted decedent, i.e., "this commotion of having to repair valves, pipes, steam pipes, no matter how light this additional effort was, the strain upon him was sufficient to precipitate acute cardiac failure". This physician also assumed that decedent was alive when he fell because there was some bleeding from the lacerated scalp, and that the additional shock of the fall hastened his demise. Also in this physician's opinion decedent's weakness in the early afternoon was due to cardiac insufficiency from which he had not entirely recovered when confronted by the steam pipe situation.

The physicians called for the carrier were all of the opinion that decedent's death was not the result of his work, or of

any strain or exertion, but simply because of his advanced cardiac disease he had come to the end of the rope. We would agree that the greater weight of medical testimony is against the finding of an accident, but that is not the test which a reviewing court may apply to a decision of the Workmen's Compensation Board. And the substantial evidence rule has been narrowed in heart cases to the viewpoint of the average man (*Matter of Masse* v. *Robinson Co.*, 301 N. Y. 34), a rule somewhat akin to that applied in negligence cases where the conduct of the mythical person of average caution and prudence is the standard of care. If the facts and circumstances sustain, upon any reasonable hypothesis, the conclusion that an average man would view an event as accidental, then the determination of the board is final (*Matter of Broderick* v. *Liebmann Breweries*, 277 App. Div. 422).

We think the facts and circumstances disclosed in this record bring the claim within the rule just stated. There are some indicia of the unusual that would portend the accidental from the viewpoint of the average man. Decedent was confronted by a situation that amounted to an emergency to one in his position and condition. It is immaterial that the same situation might not have been disturbing to someone else. While there is no precise proof of excessive physical exertion, mental strain can undoubtedly be implied from the circumstances. Then too there was the nature of his fall. That he must have suffered a rather violent fall is evident from the " thud " which his coemployee heard, and also from the fact that he was bleeding from his scalp wound as he lay on the floor. That he was alive for some moments after he struck the floor may be inferred from the same bleeding. These matters we think would be suggestive to the average man of something unforeseen and catastrophic; and, since the actual fall was unwitnessed, the conclusion of an accident is aided by the presumption provided in section 21 of the Workmen's Compensation Law. Despite substantial medical evidence to the contrary we think the presumption is called into play when there is some evidence from which an accident may be inferred. The fact that decedent suffered from a severe underlying pathology does not *ipso facto* bar the claim (*Matter of Masse* v. *Robinson Co., supra*). It merely points up the closeness of the issue as to whether decedent died solely because of heart disease or whether his fatal attack was brought on by strain due to an unusual condition encountered in his employment.

The principal authority cited against affirmance is *Matter of McCormack* v. *National City Bank* (303 N. Y. 5), in which many other authorities are reviewed. That case may be distinguished on the facts from the present claim. The proof there was simply to the effect that a workman was found lying unconscious, and that he subsequently died of a ruptured pre-existing aneurysm at the base of the brain. There was no evidence of exertion or strain, or anything else that connected his death with his employment. The factual distinction between such facts and those of the present claim is obvious.

Although this is a borderline case we reach the conclusion from the record as the whole that the factual issue of accidental death rested with finality in the hands of the board, and that therefore the award should be affirmed.

Coon, J. (dissenting). I vote to reverse and dismiss the claim. In my view the findings on autopsy and the positive medical proof, together with the other undisputed evidence in the case, establish conclusively that decedent's death was solely due to his pre-existing heart disease, unrelated to his work. Decedent had been near death on previous occasions because of the very bad condition of his heart. The autopsy produced no evidence of any fresh heart damage. While two doctors who had never seen decedent expressed opinions, in answer to a hypothetical question, in support of causal relation, in my opinion both assumed facts unsupported by any evidence and were wholly speculative. There is no evidence of exertion or that decedent fell from a ladder or that he so much as touched, let alone repaired, any " valves, pipes or steam pipes." On the record as a whole I find no substantial evidence to sustain the award. (*Matter of McCormack* v. *National City Bank*, 303 N. Y. 5; *Matter of Kopec* v. *Buffalo Brake Beam-Acme Steel & Malleable Iron Works*, 304 N. Y. 65; *Matter of Hayes* v. *Stroock & Co.*, 283 App. Div. 578; *Matter of Yarkum* v. *Rosenblum & Weller*, 283 App. Div. 572.)

Bergan, Imrie and Zeller, JJ., concur with Foster, P. J.; Coon, J., dissents, in a memorandum.

Award affirmed, with costs to the Workmen's Compensation Board.