In the Matter of the Claim of OLYMPIA BONOMI, on Behalf of Herself and LOUISA BONOMI and Another, Infants, Respondent, against POIRIER & McLANE CORPORATION et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, March 21, 1956.

*Charles P. Barre* for appellants.

*Jacob K. Javits, Attorney-General* (*Gilbert M. Landy* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

Coon, J. Deceased employee was found unconscious, under circumstances which will be briefly described, by a coemployee. He died five days later, concededly as a result of a ruptured aneurysm. Appellants assert that there is inadequate evidence that decedent suffered an industrial accident, and that there is inadequate evidence of causal relation between his death and the claimed accident. The real question presented by this record is whether decedent suffered the rupture of the aneurysm spontaneously and therefore, in an unconscious state, slid to the place where he was found, or whether he fell and the fall caused the rupture of the aneurysm.

Decedent was working under street level for a contractor in the city of New York. He was working on top of a water main twenty inches in diameter and only three feet seven inches below the street level, which necessitated his working in a crouched, crawling or straddling position. The ground at the bottom of the excavation was about ten feet below the water main. Along either side of the water main and somewhat lower than the top of the main were steel girders about twenty inches in width and separated from the water main by a distance of about seventeen inches. The coemployee, working on the bottom of the excavation, had been handing materials up to decedent and conversing with him. When the coemployee suddenly discovered that no answer was forthcoming, he heard decedent groaning and found him lying unconscious on one of the steel girders with his head in the space between the girder and the water main. No one actually saw decedent fall, either when conscious or unconscious. He was removed to a hospital, where the hospital records indicate that there was no evidence of injury to the head and no external contusion noted, or bleeding or discharge from any of the head or face orifices, and no evidence of a skull fracture or vascular abnormality. Three days later decedent was admitted to another hospital, where a part of the hospital records state: "His family was unable to give information regarding the incident, especially concerning those factors as to whether the patient either tripped and fell or fainted, or lost consciousness and after this fell." An autopsy was performed and the findings indicate that there were no marks of injury on the body or observable injury to the brain other than the subarachnoid hemorrhage; no fractures of the skull or cervical

spine, and no fractures of the bones of the face, and lists as the cause of death, " Spontaneous subarachnoid haemorrhage from rupture of aneurysm of the circle of willis. Cerebral compression."

Before relating the evidence claimed to support an accidental injury resulting from a fall on the one hand, and a spontaneous rupture of the aneurysm producing unconsciousness and a fall thereafter on the other hand, the rather strange history of this litigation should be mentioned. Originally a compensation referee held in favor of the claimant on the question of accident and causal relation and made an award on March 9, 1951. Upon application for review the board affirmed that decision and award on May 15, 1951. On October 17, 1951, the same board panel, on its own motion, " in the light of the recent decision of the Court of Appeals in the Matter of McCormack v. The National City Bank of New York " (303 N. Y. 5), rescinded its decision of May 15, 1951, and restored the case to the calendar " to give the widow an opportunity to introduce further proof as to whether death was due to the alleged accident or to the work performed by the decedent under adverse conditions ", and then ordered the case referred back to the panel for decision. On March 27, 1952, the same board panel noted that the widow and her attorney had failed to avail themselves of the opportunity afforded, disallowed the claim, finding: " that no accident or causal relation have been established." Approximately nine months later claimant, through a different attorney, filed an application, dated December 3, 1952, to reopen the claim " for the purpose of hearing the additional available evidence." After various hearings at which the reopening was opposed, the case was finally reopened and restored to the calendar. Thereafter decedent's widow and daughter testified, nearly four years after decedent's death, that decedent had told them in a brief moment while a nurse removed a mask from his face, in substance, that he had slipped and fell. This appears to be the first time that such a conversation was mentioned. Based largely, if not entirely, upon this hearsay testimony, alleged to be corroborated, the award was made from which this appeal was taken. It would seem that this belated hearsay testimony of interested witnesses would be subject to some skepticism, and a careful scrutiny of the record for the corroboration required by section 118 of the Workmen's Compensation Law is indicated.

No one seems to have approached this claim on any theory that adverse conditions of work brought about decedent's attack, but claimant has relied exclusively upon the theory that

decedent slipped and fell. It is urged that the testimony of the employer's safety engineer corroborates the hearsay testimony of the widow and daughter. In the first place it appears clearly that the safety engineer was called after decedent was found unconscious, and that all of his testimony was the result of hearsay. He was not present at the time of the occurrence and observed nothing personally. Moreover, he gave no testimony that decedent " slipped and fell " but only that from his investigation it appeared that decedent " slid " from the water main about thirty inches to the girder. In his written report this witness asserted: the " man was sitting on pipe when he lost consciousness for an unknown reason and slid off." Instead of corroborating the hearsay statement that decedent " slipped and fell " this report would seem to refute it.

We find in this record no evidence of circumstances or other evidence adequate to supply the necessary corroboration of the hearsay testimony, and the record is therefore inadequate to sustain a finding that decedent " slipped and fell " or that he sustained an industrial accident. (*Matter of Comstock v. Goetz Oil Corp.,* 286 App. Div. 132; *Matter of Ptaszynski v. American Sugar Refining Co.,* 280 App. Div. 905, affd. 305 N. Y. 833.)

Appellants' contention that there is no substantial evidence of causal relation is also well taken. All of the medical testimony in the case, including the autopsy findings, is unequivocally to the effect that decedent suffered the ruptured aneurysm spontaneously producing a state of coma which caused him to fall, except the opinion testimony of one doctor. That doctor's opinion was based upon an assumption that decedent fell ten feet to the ground and hit his head, concededly not the fact. Unless expert opinion is based on a sound hypothesis it lacks probative force. (*Matter of Riehl v. Town of Amherst,* 308 N. Y. 212; *Matter of Peploe v. Burns Bros.,* 281 App. Div. 134.)

On the whole record there is no substantial evidence that decedent suffered an industrial accident or that his death was causally related to his employment. (*Matter of McCormack v. National City Bank of N. Y.,* 303 N. Y. 5; *Matter of Peploe v. Burns Bros., supra.*)

The award should be reversed and the claim dismissed, with costs to appellants against the Workmen's Compensation Board.

FOSTER, P. J., HALPERN, ZELLER and GIBSON, JJ., concur.

Award reversed and claim dismissed, with costs to the appellants against the Workmen's Compensation Board.