■ In the Matter of the Claim of CECELIA MITSKEVICH, Respondent, v. GRUMMAN AIRCRAFT ENGINEERING CORPORATION et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— GIBSON, P. J. Appeal from an award of death benefits, the issues arising upon appellants' contentions that death was not caused by accident arising out of and in the course of the employment and in any event was not causally related to any industrial injury. Decedent had been assigned to light work in the employer's aircraft plant because of chronic congestive heart failure. While at work, he fell, arose and called to a co-worker who saw him staggering, bleeding from a cut on the head, and asked what had happened; to which decedent replied, "*I don't know.* I must have blacked out. I found myself on the floor." (Italics supplied.) In this context of a denial of knowledge, the colloquial "must have" cannot reasonably be accounted evidence of an idiopathic fall; and, indeed, appellants do not clearly advance that contention, if at all, and at the hearing before the board review panel, upon inquiry stated that this was an "unwitnessed accident". In any event, that is the correct legal conclusion (*Matter of Hoffman* v. *New York Cent. R. R. Co.*, 290 N. Y. 277; *Matter of Moraes* v. *National Biscuit Co.*, 2 A D 2d 619, mot. for lv. to app. den. 2 N Y 2d 705) and it follows, of course, that the presumption of a compensable industrial accident within section 21 of the Workmen's Compensation Law is applicable to the fall and the objectively demonstrated head injury which medical proof related to decedent's death. As will be shown, we have here,

as in *Matter of Kurash* v. *Franklin Stores Corp.* (12 A D 2d 368, 371, mot. for lv. to app. den. 9 N Y 2d 612), "a medical record which is sufficient to re-enforce the presumption of accident; and the board was not bound to hold that the medical opinion the other way must be treated as 'substantial evidence to the contrary' in the sense that the presumption must as a matter of law be deemed destroyed." In this case of an objective causative injury, the presumption is useful, whether or not essential, as relieving claimant of whatever burden might otherwise be imposed upon her to negate any theory of an idiopathic fall. The presumption, thus aiding to establish the facts of an industrial accident and immediate head injury, was likewise applicable to their sequelae, whether the fatal heart attack be found to have been caused (1) directly by the blow to the head, evidenced by the laceration, or (2) by excessive exertion in walking, with assistance, at least a mile to the plant physician's office for treatment of the accidental injury and in subsequently, at the plant physician's direction, entering and riding in an automobile where collapse and death occurred or (3) by some or all of those factors. Decedent's attending physician reported that decedent "fell sustaining a laceration of the scalp" and that there was "substantial delay in rendering medical care and he expired in acute heart failure" and concluded that "in view of" his "advanced coronary arteriosclerosis, the injury plus the circumstances thereafter contributed to his death." Testifying, he said that there was "a good probability that with the injury that he sustained, plus getting into the ambulance [actually a company station wagon], plus the ride, that this patient then went into heart failure." The Referee then questioned the witness and after remarking upon decedent's "preexisting arteriosclerotic heart disease", asked, "Then we have this accident. He was hit on the head. He was taken — or walked to the ambulance [*sic*], and all these facts may have precipitated this heart attack at that particular time?" To this, the doctor replied, "Correct." Cross-examining, the carrier's attorney asked the doctor to assume that upon the plant physician's examination of decedent "within minutes" of the fall "the heart showed no acute symptomatology", and the doctor said, "Between that time and the time that he was pronounced dead this man went into acute heart failure. Therefore, I feel that the events contributed to this man's going into heart failure." On redirect examination, the witness was asked to consider the additional "factor" that decedent "staggered" to the plant physician's office (shown by the testimony of the plant physician to have been at least a mile distant) or at least walked there with his fellow employees supporting him on either side. In response, the doctor said, "I think that it all probably contributed." Although the doctor conceded that the fall "could" have been caused by "the commencement of a heart malfunction", he pointed out that the plant physician found no heart failure and that decedent could not have suffered a heart failure and recovered from it before seeing the plant physician "and then gone into it again." The plant physician, called by the carrier, denied causation only to the extent that he said that he would not consider the laceration a cause of heart failure, but was not asked as to the impact that the laceration evidenced or the additional factors considered by claimant's expert; and on cross-examination he said that he could not say whether decedent's activities after the fall constituted "sufficient exertion to cause the subsequent heart failure". The plant physician did testify, however, that decedent and his two fellow employees "Foolishly" walked at least a mile to his office and that "They should have called the medical department right on the spot." Another medical expert called by the carrier denied causal relation. The board thereupon found upon substantial evidence "that the claimant fell and sustained an accidental injury to his head * * *

arising out of and in the course of his employment [and] that the accidental injury precipitated and contributed to the acute heart failure which resulted in the death on the same day." Although the decision, as respects the recitals preceding the decisional language quoted and as respects the decision proper, is in a form which we have on more than one occasion criticized (see, e.g., *Matter of Ferreri* v. *General Auto Driving School*, 22 A D 2d 718, 719), upon this particular record and decision no useful purpose would be served by delaying this death case already 41 months old by remittal for additional findings; as upon the uncontradicted and unchallenged proof as to the series of events intervening decedent's fall and his death we are warranted in construing the board's reference to the "accidental injury", which it found precipitative of the fatal heart attack, as intending to include, and as including those events demonstrated to have been sequential to the accidental injury. Decision affirmed, with costs to the Workmen's Compensation Board. Gibson, P. J., Reynolds, Aulisi and Staley, Jr., JJ., concur in memorandum decision by Gibson, P. J. Herlihy, J., dissents and votes to reverse and remit in the following memorandum. Herlihy, J. (dissenting). The admittedly unwitnessed fall of the decedent made applicable the presumption under section 21 of the Workmen's Compensation Law and while I do not agree with the interpretation of the facts as outlined in the majority opinion, or the method adopted in making applicable the presumption, a line of decisional law seems to suggest that an award, if properly made, can be affirmed in this case. (See *Matter of Hoffman* v. *New York Cent. R. R. Co.*, 290 N. Y. 277; *Matter of Sleator* v. *National City Bank*, 285 App. Div. 393; *Matter of Moraes* v. *National Biscuit Co.*, 2 A D 2d 619, mot. for lv. to app. den. 2 N Y 2d 705; *Matter of Kurash* v. *Franklin Stores Corp.*, 12 A D 2d 368; *Matter of Weisel* v. *National Transp. Co.*, 14 A D 2d 621; *Matter of Bruni* v. *International Term. Operating Co.*, 26 A D 2d 887.) It should be observed that the cited cases are not buttressed by proof constituting substantial evidence such as found in the present case and which, as a matter of law, is sufficient to overcome the presumption. The board's conclusory findings should not be permitted to stand for affirmance and I do not wish to be bound by the majority's statement presuming to make new findings. From the board's decision it is impossible to deduce whether its affirmance was based on the head injury, the exertion of getting into the automobile or the resulting "emotional upset". It is sufficient to note that the board does not rely upon "the series of events intervening decedent's fall and his death", as does the majority, but without enumerating what constitutes the "series". (See *Matter of Woodworth* v. *County of Onondaga*, 18 A D 2d 729.) It might be possible, based on "the series of events" to factually find a heart accident without reference to the idiopathic fall. The element of time, while of great import, is not a sufficient reason for accepting what otherwise would be, as a matter of law, insufficient findings by the board and permitting this court to indulge in making its own findings. Under the circumstances, I would reverse and remit for further consideration by the board and for new and proper findings.