In the Matter of the Claim of ARLENE C. ZAEPFEL, Respondent, against E. I. DU PONT DE NEMOURS & COMPANY, INCORPORATED, Appellant, and BUFFALO STAINLESS CASTING CORPORATION et al., Respondents.

WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, October 20, 1954.

*Edward L. Robinson, Jr., Abel Klaw, William M. Fay, Solon J. Stone* and *Edward J. Robinson* for appellant.

*George J. Hayes* and *Bernard Katzen* for Buffalo Stainless Casting Corporation and another, respondents.

*Nathaniel L. Goldstein, Attorney-General (Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

Coon, J.   The deceased employee was a chemist, and following his graduation from college he was employed as a chemist successively by four employers.   He worked for E. I. du Pont de Nemours & Company, Incorporated, from June 8, 1936, to December 31, 1943; for the Linde Air Products Company from January 9, 1944, to November 15, 1946, and from September 5, 1947, to July 19, 1948; for Standard Mirror Company from December 15, 1946, to August 25, 1947, and for Buffalo Stainless Casting Corporation from October 11, 1948, until November 27, 1948.   On the latter date, because of illness, decedent stopped work, and on July 15, 1949, he died at the age of thirty-nine years.   The disease from which decedent suffered during his lifetime, and which unquestionably caused his death, was aplastic anemia, a rare disease affecting the bone marrow and resulting in a failure of the marrow to produce certain blood substances, causing a blood deficiency.

Claims were filed for disability due to aplastic anemia alleged to be causally related to chemical exposure while working for all four of the employers, and the case was tried upon the theory that each of the employments contributed in some degree to the disease.   These blanket allegations and theory, together with some evidence tending to support them, were perhaps due to the paucity of experience generally with aplastic anemia as an industrial disease.   Hearings were held during the lifetime of the deceased employee, at which he testified, and, following his death a death claim was filed against all of the employers and the litigation proceeded.   All parties were represented by able counsel; many distinguished experts and specialists in the fields of chemistry and medicine were called as witnesses, and a very extensive record was developed.

The board has found that decedent became totally disabled on November 2, 1948, as a result of poisoning due to benzol and benzene derivatives, contracted while in the employ of du Pont, which caused him to be disabled until July 15, 1949, and which caused his death from aplastic anemia, an occupational disease, on July 15, 1949.   The board has also found that there was no causal relation between the disability and death and decedent's employment with any employer other than the appellant du Pont, and the award has been made against du Pont alone.   The principal question presented is whether there is substantial evidence in this record to support such findings.

Detailed evidence was presented as to all of the chemical substances to which decedent was exposed or which he contacted during his various employments.   The board has found that

decedent was exposed to benzol and benzene derivatives in his employment as a research chemist at du Pont, and that during his employment by the other three employers "there was no exposure to benzol or benzene derivatives, or to any other chemicals or substances sufficient to leave any detectable trace on autopsy." There is ample evidence to sustain such a finding.

The medical testimony concerning the effect of such exposure and concerning the cause of aplastic anemia, and decedent's disability and death, was conflicting. Insofar as there was a conflict of medical testimony, it is, of course, peculiarly within the province of the board to pass upon questions of credibility and reasonableness and to weigh the evidence. (Workmen's Compensation Law, § 20; *Matter of Altschuller* v. *Bressler,* 289 N. Y. 463.) The conclusions of the board in those respects must be sustained if the record contains any substantial evidence to support them.

Dr. Phillies, a specialist in hematology and internal medicine, to whom decedent was referred by another doctor, attended decedent and obtained a detailed history from him, and treated him continuously from December 4, 1948, until his death. In portions of his extensive testimony he says: "The connection between benzene ring compounds and aplastic anemia was first worked out through the exposure of people to the fumes of benzene proper, that is C6H6. That particular chemical has been incriminated and is accepted universally as a causative factor in initiating aplastic anemia. Since that has been established other benzene ring compounds are gradually being recognized as being also causative agents in suppressing or depressing the functions of the marrow." He testified to an opinion, expressed with reasonable medical certainty, "Historically and from the evidence presented, the picture could very well have begun at the time he was employed handling the benzene ring products at DuPont", and that the condition could have been initiated with decedent's first employment at du Pont. There is other medical testimony in the record that certain benzol ring compounds may produce aplastic anemia when introduced into the body.

Appellant urges that the use of the word "could" and similar words in some instances, afflict the opinion with a lack of positiveness which destroys the probative value. The form and language used are not controlling. The law does not require such positiveness, especially in workmen's compensation cases. (*Matter of Green* v. *Geiger,* 253 App. Div. 469, 255 App. Div. 903, affd. 280 N. Y. 610.) This is especially true when dealing with

a rather uncommon disease, when some caution on the part of a doctor is commendable, and where, as here, the opinion is fortified by detailed explanation and other facts in the record which add to its reasonableness and probable correctness. Such an opinion might well have more probative value, in the minds of the triers of fact, than a glibly expressed opinion in the usual accepted language but unsupported by evidence.

In line with the original theory of claimant's counsel that all four employments were causally connected, Dr. Phillies was asked whether any or all laboratory exposures are " either directly, indirectly, by aggravation or in any other fashion identified with the disease and his subsequent death? " The doctor expressed an opinion that the death was attributable to constant industrial exposure over the period of his industrial employment and refused to positively eliminate any employment from having any effect whatever upon the disease. However, he persisted in his opinion that the disease originated in the employment at du Pont and explained his position with facts in detail, while he did not provide any reasonable explanation to support the conclusion that chemicals other than benzene ring derivatives aggravated the condition. In these circumstances the board was not bound to accept his opinion *in toto,* but could adopt such conclusions as it deemed supported by the record. While the board may not speculate, it may rationalize and reason upon the record as a whole and take a realistic view in making its determination.

Appellant relies principally upon *Matter of Kopec* v. *Buffalo Brake Beam-Acme Steel & Malleable Iron Works* (304 N. Y. 65), and *Matter of McCormack* v. *National City Bank* (303 N. Y. 5). We think the record in this case meets the requirements there found. In support of medical opinion by the doctor who had the benefit of personal observation, the record discloses a young man with no serious ailment exposed by his employment to chemicals known to cause aplastic anemia, who contracted such disease with no other explanation, and without dispute died at the age of thirty-nine as a result of the disease. Neither the spirit, purpose nor the language of the Workmen's Compensation Law requires that, to become entitled to compensation his widow must establish the precise exposure which caused his death to an absolute certainty.

The award should be affirmed, with one bill of costs to be divided between the Workmen's Compensation Board and the respondents filing a brief, and with printing disbursements to each.

· FOSTER, P. J., BERGAN, HALPERN and IMRIE, JJ., concur.

Award affirmed, with one bill of costs to be divided between the Workmen's Compensation Board and the respondents filing a brief, with printing disbursements to each.