In the Matter of the Claim of Bertha Miller, Respondent, against National Cabinet Company et al., Appellants, and Michigan Mutual Insurance Company, Respondent. Workmen's Compensation Board, Respondent.

Third Department, June 17, 1959.

*Lewis & Lyons* (*Benedict T. Mangano* and *La Verne G. Lewis* of counsel), for appellants.

*D. Joseph DeAndrea* for claimant-respondent.

*Tucker & Bisselle* (*Morgan F. Bisselle* and *Warren C. Tucker* of counsel), for Michigan Mutual Insurance Company, respondent.

*Louis J. Lefkowitz, Attorney-General (Roy Wiedersum* and *Henriette Frieder* of counsel), for Workmen's Compensation Board, respondent.

GIBSON, J. This appeal in a workmen's compensation case by an employer and one of its insurance carriers presents the factual issue of causal relation as between the disease leukemia and the supposed inhalation of benzol. In addition, a question of law is posed by appellants' challenge to the authority of the Workmen's Compensation Board to apportion liability as against successive carriers of the same employer during the period of exposure.

Decedent died of chronic monocytic leukemia which the board found an occupational disease contracted within five years previous to death through exposure to benzol in decedent's employment as a cabinet finisher. Decedent worked for the appellant employer from June 6, 1946 to January 28, 1949. He then entered another employ in which there was no exposure to benzol. He died on August 10, 1950. Appellant employer's carriers were appellant General Mutual Insurance Company from June 14, 1946 to June 14, 1948 and respondent Michigan Mutual Insurance Company from June 14, 1948 to January 28, 1949. The board made no finding as to date of disablement (apparently on the theory that such was academic since there was no claim for disability benefits) and apportioned the award equally as against the two carriers who were successively on the risk for all but eight days of decedent's employment.

The respondent carrier once attempted to appeal but, its notice thereof having been found untimely, paid its portion of the award and is now confined to the argument that the appellant carrier was properly charged with the remainder.

Appellants deny injurious exposure but contend that in any event no causal relation was shown between the leukemia from which decedent died and the benzol poisoning which the board found. It is argued, further, that the failure to find the date of disablement is fatal to the decision and, finally, that the board was without authority to apportion the award. Appellants' brief does not dispute the diagnosis of leukemia and concedes that if the leukemia was in fact due to exposure to benzol, then decedent did sustain the occupational disease of benzol poisoning. Further, appellants " accept " the board's finding that there was no exposure in the employment which followed that with appellant employer.

Benzol and at least one compound containing a substantial percentage of benzol were used as paint and varnish removers

in decedent's work of furniture finishing. The contact found included that by way of inhalation. Decedent supervised the finishing room, which was relatively small in area, and his work included the instruction of others in the use of the chemicals employed and at least occasional use of them by himself. In 1948, whatever exposure had previously existed was increased when some 40 to 50 desks had to be refinished and some 65 gallons of a varnish remover containing benzol were used by decedent and by some of the five or six men under his supervision, the work continuing most of the year. In January, 1949, the last month of decedent's employment with appellant employer, 10 gallons of remover were purchased. We are unable to hold unsubstantial this and the other evidence of exposure to a '' process involving the use of *or* direct contact with benzol ''. (Workmen's Compensation Law, § 3, subd. 2, par. 8; italics supplied.)

Neither can it be held that the medical proof of causal relation was less than substantial. Three physicians denied causation but the board chose to accept the contrary opinion of a specialist in hematology and industrial medical diseases called by claimant. Appellants question the form in which this physician expressed his opinion,—'' that a person exposed to benzol may develop leukemia * * * that the incidence of leukemia, especially chronic myelocytic leukemia, is quite high in patients who have been exposed to benzol ''. We read this, however, in context with the doctor's affirmative answer to the preceding question, which was, in substance, whether he could, with a reasonable degree of certainty, state an opinion as to whether or not the use of benzol during the periods described was the competent producing cause of the leukemia. Thus read in context, the doctor's answer seems to assign causation in the particular case. As we said in another case involving benzol poisoning, '' Appellant urges that the use of the word ' could ' and similar words in some instances, afflict the opinion with a lack of positiveness which destroys the probative value. The form and language used are not controlling. The law does not require such positiveness, especially in workmen's compensation cases. * * * This is especially true when dealing with a rather uncommon disease, when some caution on the part of a doctor is commendable, and where, as here, the opinion is fortified by detailed explanation and other facts in the record which add to its reasonableness and probable correctness.'' (*Matter of Zaepfel* v. *du Pont de Nemours & Co.*, 284 App. Div. 693, 695–696, affd. 309 N. Y. 962.) In our view, it would work an unnecessary hardship upon all the litigants to remit this death claim, now nearly nine years old, merely to permit a medical opinion to

be rephrased as to form, so as to meet an objection more technical than real.

Appellants' expert denied any causal relation between leukemia and inhalation of benzol but admitted that " some experts and specialists and authorities * * * feel just the opposite ". This points up the sharp conflict of medical opinion. " Neither opinion is certain nor incredible, and to adopt one and reject the other requires entry into a field of fact with power to weigh and balance testimony, a power we do not possess in compensation cases." (*Matter of Gioia* v. *Courtmel Co.*, 283 App. Div. 40, 42, motion for leave to appeal denied 306 N. Y. 985.)

The award thus warranted by the evidence was, in our view, properly apportioned between the carriers which were on the risk for all but a negligible portion of the period of decedent's employment and exposure. This conclusion seems to us to be required by reason of the fact that the disablement occurred subsequent to the employment. The question of apportionment in this latter circumstance has not previously been passed upon. The general rule is to the contrary. " Where there is a change of employers the risk may be divided (§ 44), but there is no apportionment provided for carriers where the employer is unchanged." (*Matter of Lane* v. *Daystrom Corp.*, 276 App. Div. 247, 248, motion for leave to appeal denied 300 N. Y. 761; *Matter of Lumsden* v. *Despatch Shops,* 5 A D 2d 242.) In each of these cases, however, as in each of the other cases invoking the same general rule, disablement occurred during an employment in which an injurious exposure occurred and the award was charged to the carrier affording coverage at the date of disablement. These cases did little more than to express and enforce the statutory provisions applicable in such circumstances, which fix liability upon the employer at the date of disablement, and, in particular cases, apportion liability as between employers. (See Workmen's Compensation Law, §§ 38, 44.) No provision is made for apportionment as between carriers of the same employer and in the cases above cited or alluded to none was necessary to the effectuation of the statutory scheme or to the protection of employee and employer alike.

There did arise, however, the question of the right to compensation of one who contracted disease in an employment and became disabled after leaving it and while employed by no one. The former employer was held responsible. " Otherwise ", the court said, " there would be no remedy and we are reluctant to believe that the Legislature contemplated such a result. The word ' employee ' as used in section 44, we think was intended to describe *a person who was employed at the time he contracted*

*the disease rather than at the time he became disabled.''*
(Emphasis supplied.) (*Commissioner of Taxation and Finance
v. Nu-Art Adv. Co.,* 271 N. Y. 112, 115.) Appellants concede that
this holding is a proper basis for the award against the employer
here but deny that its language lends support to the apportion-
ment directed by the board. The conclusion from the decision
seems to us inescapable, however. When disablement occurs
after the termination of the offending employment, status and
liability alike have to be fixed, as they were in the case of
Nu-Art's former employee, with reference to '' the time [claim-
ant] contracted the disease '' (p. 115). The '' time '' of contract-
ing a slow-starting disease cannot often be set off or distin-
guished from the period of exposure. Thus causation cannot be
limited, as may disablement, to the experience of a day but will
necessarily be assignable in point of time to a period, and one
that will usually be protracted. In such case, with disablement
subsequent to the offending employment, and in the circumstance
of coverage by two or more carriers, apportionment seems to us
not only fair and reasonable but indeed necessary and unavoid-
able under any rational procedure. The absence of specific
statutory authority seems unimportant, particularly when the
result follows as a simple matter of causation. (Cf. *Matter of
Anderson v. Babcock & Wilcox Co.,* 256 N. Y. 146, 149; *Matter
of Bahry v. Nu-Glamore Beauty Salon,* 4 A D 2d 351, 355, motion
for leave to appeal denied 3 N Y 2d 707.) When causation,
upon which the liability of employer and carrier alike depends,
is properly and necessarily assignable to an appreciable interval
of time, the liability of the carrier or carriers is surely coexten-
sive with that of the employer as it develops from day to day
during the period.

In view of our conclusion that the award was properly appor-
tioned against the carriers on the risk during the period of
exposure, appellants' objection to the failure of the board to find
a date of disablement becomes academic. It is obvious, in any
event, that such date was within the period of decedent's last
employment, in which there was concededly no exposure. (Cf.
*Matter of Commissioner of Taxation and Finance v. Nu-Art Adv.
Co., supra.*)

The decision and award should be affirmed, with costs to
respondents filing briefs.

HERLIHY, J. (dissenting). I do not agree with the majority
that there is causal relationship between the leukemia and the
claimed inhalation of benzol and vote to reverse and dismiss the
claim.

The proof offered by the claimant is not substantial but based upon speculation and surmise by the claimant's doctor as against positive statements of no relationship by the doctors for the carrier. The latter testimony is substantial and realistic and the record as a whole supports that conclusion. It appears to me that by judicial interpretation, the majority is attempting to decide, what the medical profession by diagnosis and study has not been able to answer.

FOSTER, P. J., COON and REYNOLDS, JJ., concur with GIBSON, J.; HERLIHY, J., dissents in a memorandum.

Decision and award affirmed, with costs to the respondents filing briefs.