In the Matter of the Claim of WILLIAM GROFF, Respondent, *v.* NATIONAL GYPSUM COMPANY et al., Appellants. WORKMEN's COMPENSATION BOARD, Respondent.

Third Department, May 7, 1963.

*Benedict T. Mangano* for National Gypsum Company, appellant.

*John M. Cullen* for Special Disability Fund, appellant.

*S. Mattiolo* for claimant-respondent.

*Louis J. Lefkowitz, Attorney-General* (*Roy Wiedersum* and *Sylvia Livingston* of counsel), for Workmen's Compensation Board, respondent.

TAYLOR, J. A self-insured employer and the Special Disability Fund appeal from a decision and award of the Workmen's Compensation Board for permanent total disability found to be due to silicosis causally related to the claimant's last employment.

Between 1919 and 1944 claimant worked as a miner of gypsum for other employers. For the 13 years immediately preceding his disablement on October 15, 1957 he was employed as a track foreman in a similar mine operated by the appellant employer. The workmen in his charge were engaged in the laying and maintenance of the rails of an underground railroad used essentially to transport gypsum rock to a crusher situated at the entrance of the mine. The extracting procedures then in vogue entailed the drilling of gypsum seams averaging about 42 inches in height without removing the overlying material, and the conveyance of the mined rock by means of a shuttle car low enough to permit its passage within the limited headroom to a loading point at the terminus of the existing railroad track. To extend the trackage as the operations reached into the unworked areas of the mine with the view of decreasing the transportational distance to the rails, haulageways about six feet in height and of sufficient width to accommodate the railway's cars were cut. This was accomplished by drilling and blasting vertically into the **overburden** containing silica-bearing limestone above the worked-**out gypsum** seams and by removing the shattered material. Employees known as " roof crushers " who performed this work were instructed to use water in the process. It is conceded that gypsum, a mineral consisting of hydrous calcium sulphate, contains about 2% free silica.

The appellants deny that claimant was exposed to an injurious dust hazard during the period of his last employ and contend that his disability, the permanency and totality of which are not disputed, is due to obstructive emphysema, a disease of unknown etiology.

In describing the working conditions which prevailed in the mine, the claimant stated to examining physicians that his employment took him on occasion within 60 or 70 feet of the face of the drilling operations where the atmosphere was so dusty that at times other workmen in the vicinity were not visible and that "only when an inspector [came] around" was water employed to allay the dust. It appears from a letter in the record that in the months of July and August, 1957 and on several occasions thereafter an officer of the representative labor union discussed with the appellant employer "the issue of bad air in the mines" and that on September 2, 1959 he was informed of a company plan to erect brattices "to correct the air problem." Doctor Brock, a member of the board's committee of expert consultants on dust diseases, twice examined the claimant, filed two reports, was produced as a witness on two separate occasions and cross-examined at considerable length by the appellant employer. While this doctor exhibited some confusion as to the precise nature of claimant's work during his last employ, yet given the hypotheses that the tracklaying was performed in proximity to the drilling operations and in dust of sufficient density to interrupt visibility he expressed the opinion that such constituted "a very definite dust exposure." He regarded periodic dust count samplings taken in the employer's mine as unrepresentative of the extent to which claimant was exposed to siliceous materials and data compiled from surveys conducted in the "30's" in relation to "so-called innocuous exposures" as outmoded.

The claimant's attending physician diagnosed "Pulmonary fibrosis with Emphysema. Pneumoconiosis, according to the chest X-ray dated 12/11/57." "For the last 3 yrs.", he reported, "his cough and shortness of breath became progressively worse and, at present, upon even climbing of few stairs he is gasping for air" and further "Upon exposure to the dust in the mines he ha[d] to cough constantly." Based on chest X rays taken of the claimant in April, 1959 and in August, 1960 a roentgenologist reported a diagnostic impression of "Pulmonary fibrosis and emphysema". Doctor Brock reported and testified that he found claimant to be suffering from mixed-dust pneumoconiosis or modified silicosis with sequelae of pulmonary emphysema, chronic bronchitis and cor pulmonale causally

related to his occupation and producing total and permanent disability. In this medical opinion his fellow members of the committee of expert chest consultants concurred. "I feel", he specifically reported, "that this claimant's present pulmonary condition is causally related to his occupation as a track foreman for the National Gypsum Co." and later testified "that in this particular case he does have silicosis and that his chronic pulmonary condition and other sequelae are causally related to his silicosis." Upon cross-examination by the employer he referred to literature "replete with cases of emphysema with pnuemoconiosis" and to his own experience with thousands of cases since 1926. Emphysema, he said, is related to silicosis in "at least fifty per cent of the cases."

In support of their theses the appellants cite the testimony of a safety engineer retained by the employer to sample the air in the haulageways, the report and testimony of the board's dust consultant engineer, the findings of a survey of the employer's mine conducted by the Bureau of Mines, Tunnels, Quarries and Explosives in 1938 and the opinions of three medical consultants all to the effect that the silica content in the environment of claimant's work was well below the minimum concentration required to constitute a dangerous exposure. Each of the employer's consultants also testified categorically that the claimant's disability was due to obstructive emphysema whose origin is unknown; however, one in a report based upon an examination of the claimant and the data then at hand made several diagnoses, including "Pneumoconiosis, possibly of a mixed dust type" and "Advanced Anatomic [obstructive] Emphysema, causally related to the Pneumoconiosis" and in commenting upon a chest X-ray study comprising multiple projections which disclosed "marked fibrosis of both roots and all lobes * * * essentially nodular in configuration" another reported: "It may be reasonable to accept the findings of simple silicosis."

The appellants make much of Doctor Brock's agreement with a statement embodied in a question by the employer's representative that "Actually, it's the obstructive emphysema which is causing the disability in this case" and thus deduce that there was unanimity among the medical experts on both sides that it was obstructive emphysema and not silicosis which produced the disability. But the opinion of the board's consultant expressed with reasonable medical certainty remained to the contrary. As we read his testimony he stated that claimant was suffering from two identifiable types of emphysema, one of which he classified as obstructive which, although present, he

deemed not to be of overriding significance and the other as "compensatory" which he attributed to silicosis.

The issues of exposure and causality were factual ones. Another trier of the facts might have evaluated differently the professional and other evidence and perhaps accorded greater importance to such variables as were developed upon the cross-examination of the expert chest consultant but the weight of the evidence and the credibility of the witnesses were for the board. (*Matter of Zaepfel* v. *du Pont de Nemours & Co.*, 284 App. Div. 693, 696, affd. 309 N. Y. 962; *Matter of Epstein* v. *Cort Watch Co.*, 7 A D 2d 663, 664, motion for leave to appeal denied 5 N Y 2d 709; *Matter of Gorton* v. *Max Brenders Farm*, 7 A D 2d 686; *Matter of Lawton* v. *Endicott Johnson Corp.*, 8 A D 2d 880, motion for reargument denied 9 A D 2d 601.) We cannot say upon the record as a whole that as a matter of law the evidence which the board chose to accept lacks substantiality. (*Ernest* v. *Boggs Lake Estates*, 12 N Y 2d 414.) In these circumstances recourse to the statutory presumption (Workmen's Compensation Law, § 47) was unnecessary.

The decision and award should be affirmed, with one bill of costs to the Workmen's Compensation Board.

BERGAN, P. J., COON, GIBSON and HERLIHY, JJ., concur.

Decision and award affirmed, with one bill of costs to the Workmen's Compensation Board. Settle order on notice.