■ In the Matter of the Claim of STANLEY KWIECIEN, Respondent, v FRANK CHARLOW, Doing Business as CHARLOW PAINTING COMPANY, et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.—Appeal from a decision of the Workmen's Compensation Board, filed January 30, 1976. On this appeal we are asked to consider whether there is substantial evidence to support the board's determination that the claimant's accident of July 25, 1972 was causally related to and a consequence of a prior accident suffered by the claimant on July 3, 1969. On July 3, 1969 claimant suffered a compensable injury to his left knee and received a 7½% schedule loss. At that time the State medical examiner found the left knee to be fully stable, with no locking or buckling, no defects in flexion and minimum defects in extension. Doctor Altchek, an orthopedic surgeon, examined the claimant on four occasions following the accident. During the last examination on November 12, 1969, on which date the claimant was working, the doctor made a diagnosis of a sprain of the medial miniscus, prescribed exercises and expected a good result. Doctor Altchek found mild to moderate increased fluid in the left knee, no instability, and a good quadriceps. The claimant alleged that the knee continued to bother him, although the record does not indicate that he saw any other doctor. On July 25, 1972 claimant was working as a painter (whether as an employee or subcontractor is not totally clear) when he fell 35 feet from a ladder and sustained severe injuries. On March 27, 1974 the claim (C-27) was filed for the claimant by his doctor. Upon claimant's application of September 27, 1974, his case was reopened by the board. On December 11, 1974 the claimant was examined by Doctor Altchek, the same orthopedic surgeon who had seen him on four occasions as a result of his 1969 accident. The doctor found that the knee in question did not show any instability, there was no fluid in it and that it had a full range of motion. The doctor did not feel the claimant had a "trick" left knee. He found no permanency from the injury of 1969 and stated that "I do not believe it would be fair to blame the accident of July, 1972 on the injury of July, 1969". Claimant's doctor, who had treated him for his multiple injuries as a result of a fall from a ladder in 1972, testified that he examined the claimant's left knee on November 6, 1973, over a year after the fall from the ladder. His findings in respect to the left knee were

mainly as follows: "give out sensations that the patient complained of and pain at the medial aspect of the joint line". While the claimant's doctor abstained from making a diagnosis of the condition of the claimant's left knee which existed prior to his fall from the ladder, he did state that "Doctor Altchek could have missed the torn meniscus * * * that might have been there". In response to the referee's question whether the doctor upon his examination found any condition that would cause the claimant's knee to give out, thus causing him to fall, the doctor answered that he had the claimant's statement and "that's all I have". Conflicts in medical opinion create issues for the board to resolve and, if supported by substantial evidence, must be affirmed by this court (Matter of Manbeck v Manbeck Mach. Co., 54 AD2d 816). It is also well established that it is not necessary that the medical opinion evidence be expressed with positiveness or absolute certainty (Matter of Miller v National Cabinet Co., 8 NY2d 277; Matter of Zaepfel v du Pont de Nemours & Co., 284 App Div 693, affd 309 NY 962). The form and the language used are not controlling and the law does not require positiveness, especially in workmen's compensation cases. However, the medical opinion must be "fortified by detailed explanation and other facts in the record which add to its reasonableness and probable correctness" (Matter of Zaepfel v du Pont de Nemours & Co., supra, p 696). The substance of the claimant's doctor's testimony was that the original diagnosis of Doctor Altchek that the claimant had suffered a sprain of the medial meniscus in 1969 could only have been a break or a tear of the meniscus and that further, in claimant's doctor's opinion, Doctor Altchek "could have missed the torn meniscus * * * that might have been there". On the hypothesis that the original examining physician in 1969 "could have missed the torn meniscus", the claimant's doctor referred to a damaged or torn cartilage (medial meniscus) called, in layman's language, a "trick" knee. He then stated that in his opinion the claimant's "trick left knee" could have slipped out thus causing him to fall from the ladder. Such testimony is not a "detailed explanation and other facts in the record which add to its reasonableness and probable correctness" (Matter of Zaepfel v du Pont de Nemours & Co., supra, p 696). The testimony on behalf of the claimant does not rise to the level of substantial evidence to support the board's determination that the accident and resulting injury to the claimant's left knee in 1969 was related to and caused the fall in 1972. Decision reversed, with costs, and matter remitted for further proceedings not inconsistent herewith. Sweeney, J. P., Staley, Jr., Main and Larkin, JJ., concur; Mikoll, J., dissents and votes to affirm.